ANTHONY A. LAFARIER

*vs.*

GRAND TRUNK RAILWAY of CANADA.

Oxford.    Opinion February 4, 1892.

*Railroad. Passenger. Foreign and Interstate Commerce. R. S., c. 51, § 44.*

The statute of this State which makes a ticket for a passage on any railroad binding on the railroad company for six years from its date, with the right of the holder of the ticket to stop off at usual stopping places as often as he pleases during that period, cannot apply to a ticket purchased in Canada for a continuous passage on a particular day over the defendant's road from that Province through portions of the states of Vermont and New Hampshire into Maine. Such an application of the statute would work an interference with both foreign and inter-state commerce in the carriage of passengers.

ON EXCEPTIONS.

This was an action on the case for ejecting the plaintiff from defendants' car at Oxford station in Oxford county, July 8, 1890. The material facts are stated in the opinion. At the conclusion of the plaintiff's evidence, the presiding justice directed the jury to return a verdict for the defendant, being of the opinion that the ticket and check held by the plaintiff gave him no right to ride in the defendants' car at the time he was ejected.

*J. S. Wright*, for plaintiff.

The ticket, and check, entitled the purchaser and holder, to a ride from Somerset, P. Q., to Portland, Maine, and at the time of the plaintiff's ejectment from the train, at Oxford, it had not been used from that station to Portland, and was therefore good, entitling him to ride the balance of his journey, at any time within six years from the date of purchase of the ticket.

The plaintiff paid full and regular fare for a ride between stations named on the ticket, and the only limitation to which he was subjected was the class of car he had the right to ride in. No restrictions placed upon the ticket, or check, were binding upon the plaintiff, because they are in conflict with the statute law of Maine.

While the law of Canada where the ticket was purchased, in the absence of proof is supposed to be the common law, as determined in *Carpenter* v. *G. T. Railway Co.* 72 Maine, 388, yet when the plaintiff got within the territorial limits of this State, he was entitled to be conveyed upon his ticket or check according to the law of Maine. And while using this ticket within this State all limitations thereon were inoperative, by force of the statute.

*A. A. Strout*, for defendant.

PETERS, C. J.   The plaintiff purchased a ticket for a passage on defendant's road from Somerset in the Dominion of Canada to Portland in this State, the ticket reading thus :

"Issued by Grand Trunk Railway. Good for one second class passage within five days from date. Not good to stop over. Not transferable. From Somerset to Portland. Conductors will collect or exchange this ticket for check 'Z.' L. S. 6. Series B. J. Hickson, General Manager."

While on the route before passing out of Canada the conductor took up the ticket and gave the plaintiff a check, which represented the same contract that the ticket did, a matter well understood by the plaintiff who had been a frequent traveler on the road. The ticket was purchased at a cheaper rate than stop-off tickets were sold. The plaintiff passed on his ticket to Paris in this State where he stopped off for two months. At the end of that time he undertook to resume his passage to Portland when, refusing to pay any fare, he was ejected from the train by the conductor, for which act he sues the road. The case turns wholly upon the question whether our statute which makes railroad tickets good for six years, with the right of the holder to stop off at as many stopping places as he pleases, can constitu-

tionally be made to apply to a ticket sold by the Grand Trunk Railway Company for a continuous passage from a place in Canada to a place in Maine, so that the holder can rightfully stop off on such ticket and afterwards pursue the passage at any time during the period named while within the limits of this State. We think the statute, if to be applied to a case like the present, is amenable to the objection of unconstitutionality as an interference with both interstate and foreign commerce.

We regard the question as virtually determined by the case of *Carpenter* v. *Grand Trunk Railway Company*, 72 Maine, 388, although there is some difference between that case and this. In that, the ticket was purchased for a passage from Portland to Montreal, and the passenger was put off in Canada, whilst in this case the ticket was for a passage from a place in Canada to Portland, and the passenger was put off in this State. The act of the company in that case was decided to be justifiable. It is difficult, however, to appreciate any difference of principle in the two cases. It seems inconsistent that a ticket for a continuous passage should be binding while going one way but not the other; or rather, perhaps, that either contract should be valid while the passenger is riding in Canada and not valid while upon the soil of Maine. Such apparent incongruity is avoidable by construing the statute as applying to contracts for passage to be performed wholly within the State, and not to contracts performable partly within and partly without the State.

The plaintiff places great reliance upon the case of *Dryden* v. *Grand Trunk Railway Co*. 60 Maine, 512, a case much like the present, where the statute in question was held to be valid. But that was many years ago, and the point now presented was not even intimated to the court. No thought was taken of it. Questions of interstate commerce have grown to an immense national importance since the time of that decision.

It is now well settled that the principles of foreign or interstate commerce apply to persons as well as to property,— to passengers as to freight. Also that the power of the nation is paramount to that of the State on such questions. And if congress does not exercise its power upon any subject of commerce,

still the State cannot interfere with it if it be of a national rather than of a local character, or admits of a uniform system of regulation. The powers of congress in such case are exclusive. If congress does not legislate the presumption is that legislation is not deemed necessary. No legislation may be the best legislation. Not only is there a constitutional prohibition against State interference, but there is now a congressional prohibition as well, expressed by the interstate commerce act of 1887, which intrusts to a judicial commission the decision of many questions concerning carriage between states, or states and adjacent foreign countries.

These principles apply closely to the case in hand. The ticket in this instance entitled its bearer to a passage from a place in a foreign country through portions of the states of Vermont and New Hampshire into and across the State of Maine. Each state might have a policy of its own, and Canada another, affecting the contract between the railroad and the passenger, conflicting with one another. It would be even a more awkward result should there be conflicting state policies as to the carriage of freight as well as passengers. To be sure, the State of Maine does not undertake to regulate the contract beyond the limits of the State, but the trouble is that interference within the State in a case like this has the effect of interference without. There should be some uniform rule, established by each railroad for itself or by congress or the interstate commission for all roads. As said before, the absence of federal regulation is the best evidence that the management of such interstate carriage should be left free. The omission of regulation is of itself a regulation. It is enough that the subject matter is susceptible of management through some uniform plan or system. See 2 Red. Rail. (6th ed.) pp. 505, 513, notes and cases.

Nor can such an application of the statute, as the plaintiff insists upon, be justified upon the ground that it is an exercise of a portion of the police power of the State. A right conferred or protected by the federal constitution cannot be over-

thrown or impaired by any authority derived from the police power. 1 Dill. Mun. Cor. (3d ed.) § 142, and citations. Congress can best exercise its own police power on national subjects. In the matter under present discussion, the three states interested might exercise such power differently and undertake to enforce their contradictory policies with penalties, thus placing the road in an uncomfortable predicament. Whatever different views may be entertained as to the power of congress to supersede the action of a state in some particular applications of the principle of police power, no court has gone to such an extreme as to pretend that a state can, in the abused name of police power, intermeddle with the affairs of interstate carriage to the extent that the statute in question would if literally construed. It relates to no matter of life, or health, or morals. But it imposes burdens and affects or alters contracts.

Speaking of the power vested in congress over foreign and interstate commerce, in *Welton* v. *Missouri*, 91 U. S. 275, Mr. Justice Field said, "The power is unlimited." That case declared a state license act void which imposed a tax for vending from place to place goods manufactured in another state. Chief Justice Waite, in speaking on the same subject in *Pensacola Tel. Co.* v. *Western Union Tel. Co.* 96 U. S. 1, says: "The powers thus granted keep pace with the progress of the country and adapt themselves to the new developments of time and circumstances. They extend from the horse and its rider to the stage-coach, from the sailing vessel to the steamboat, from the coach and the steamboat to the railroad, and from the railroad to the telegraph, as these new agencies are successively brought into use to meet the demand of increasing population and wealth." In that case a tax levied upon interstate telegraphic business by virtue of a state enactment was held to be void. In *The State Freight Tax case*, 15 Wall. 232, a statute of Pennsylvania was held void which provided for taxing a railroad corporation upon its receipts from interstate traffic. The case of *Railroad* v. *Husen*, 95 U. S. 465, is to the same effect. So is the case of *Hall* v. *DeCuir*, 95 U. S. 485, upon the strength of which the opinion in the case of *Carpenter* v. *Grand Trunk Railway*, ante, largely depended.

There are numerous other decisions by the federal Supreme Court, and also many decisions by state courts, to the effect that state legislation is not allowable which imposes burdens or restraint upon interstate commerce, but they are not better illustrations of the doctrine than the cases cited. The only exceptions are cases which allow of acts of legislation that are designed to obtain from railroads a reasonable and just taxation. The principle of the above cases and of all similar cases is the principle of the present case. Here no taxes were sought for. But a burden is imposed, a meddlesome interference and restraint, which the railroad corporation is not obliged to endure.

*Exceptions overruled.*

WALTON, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.