*(Criminal Court of Cook County.)*

### People of the State of Illinois

#### vs.

### Lake Shore & Michigan Southern Railway Company.

(January 1, 1893.)

CONSTITUTIONAL LAW—RAILROAD AND WAREHOUSE ACT—ACT REQUIRING WEIGHING OF CARS OF GRAIN UNCONSTITUTIONAL AS TO INTERSTATE SHIPMENTS. The act of June 15, 1887, prescribing the manner in which and conditions under which grain shipped from one point to another shall be weighed and transferred and that the weights so ascertained shall be given in the receipts or bills of lading is unconstitutional so far as it applies to any interstate commerce shipments, but the law so far as it applies to shipments made within this state to points of destination within this state is valid.

Criminal court of Cook county. Action of debt to recover penalties accruing for violation of sections 192 and 193 of railroad and warehouse act. Heard upon demurrers to special pleas before Judge Edward F. Dunne.

*Francis A. Riddle,* attorney for plaintiff.

*Gardner & McFadon,* attorneys for defendant.

The facts are stated in the opinion.

Dunne, J.:—

This is an action in debt, brought by the people of the state of Illinois against the Lake Shore and Michigan Southern Railway Company, to recover from said company penalties accruing under sections 192 to 195 inclusive of the chapter on railroads and warehouses. Sections 192 and 193 of said act are as follows (Act June 15, 1887, Laws of Illinois, 1887, p. 253):

"192. Road receiving for transportation shall furnish suitable appliances for weighing, etc. 1. Be it enacted: That in all counties of the third class, and in all cities having not less than fifty thousand inhabitants, where bulk grain, millstuffs or seeds are delivered by any railroad transporting the same from initial points to another road for transportation to other points, such road or roads receiving the same for transportation to said points, or other connections leading thereto, shall provide suitable appliances for unloading, weighing and transferring such property from one car to another without mixing, or in any way changing the identity of the property so transferred, and such property shall be accurately weighed in suitable covered hopper scales, which will determine the actual net weight * * * which weights shall always be given in the receipts or bills of lading and used as the basis of any freight contracts affecting such shipments * * * *"

"193. Where original car runs through without transfer. * * * 2. The practice of loading grain, millstuffs or seeds into foreign or connecting line cars at the initial point from which the grain, millstuffs or seeds are originally shipped, or the running of the original car through without transfer,

shall not relieve the railroad   *   *   *   from weighing and transporting such property in the manner aforesaid.   *   *   *"
Hurd's R. S. 1891, pp. 1113, 1114.

Section 195 provides, as a penalty for the failure of any railroad company to comply with the provisions of said act the sum of not less than $100 nor more than $500 for each neglect or refusal, "to be recovered in an action of assumpsit in the name of the people of the state of Illinois, for the use of the county in which such act or acts of neglect or refusal shall occur."

The declaration contains two counts, the first alleging that the rye in question was delivered to the defendant by William H. Beebe and company; and that after demand by William H. Beebe and company, the said defendant neglected and refused to issue or to give to the said William H. Beebe and company, or any one for them, a receipt or bill of lading for said carload of rye, giving and stating therein the true and correct weight of said rye; contrary to the form of the statute in such case made and provided.

The second count of said declaration alleges that the said carload of rye was delivered to the defendant company by the Chicago, Rock Island & Pacific Railway Company, and after demand the said defendant company refused to issue to the said William H. Beebe and company, or to any other person or persons, a receipt or bill of lading for said carload of rye, stating therein the true and correct weight thereof; but did eventually issue to the said William H. Beebe and company for said carload of rye, a bill of lading stating therein that said grain was "said to weigh 31,850" meaning said to weigh "31,850 pounds" and refused to ascertain the correct weight of said rye and to issue to said William H. Beebe and company or any other person, any other or different bill of lading; contrary to the form of the statute in such case made and provided.

To these two counts of said declaration said defendant company has pleaded *nil debit;* and secondly, especially, that the defendant company used and operated the railroad as, and that it was a part and parcel of a continuous line of railroad,

extending through and from the state of Illinois, into and through the states of Indiana, Ohio, Michigan, Pennsylvania and New York, upon and over which railroad the defendant is and was engaged as a common carrier in transporting and carrying for hire, persons and property from and out of each of the aforesaid states, into each of the other of said states; said railroad of the defendant then forming only a part of the entire route of carriage, the defendant being thus engaged in commerce between the several states; that the carloads of rye in the several counts of said declaration mentioned are one and the same carload of rye; and that the said carload of rye was delivered to the Chicago, Rock Island & Pacific Railway Company, doing business as a common carrier in transporting passengers and property from and through each of said states of Illinois and Iowa into and through the other thereof, on a railroad owned and operated by it, extending continuously through said last mentioned states, and said carload of rye having been received by it at Iowa City in said state of Iowa, to be transported by it to the city of Chicago, in the county of Cook and state of Illinois for hire; that said carload of rye was accordingly transported by said company to said city of Chicago, and delivered to the defendant company by said Chicago, Rock Island & Pacific Railway Company, consigned to William H. Beebe and company at Kerrmoor, Clearfield county, in the state of Pennsylvania; that the defendant thereupon accepted the same in the regular course of business, and as a common carrier, as aforesaid, undertook for certain reward to transport and carry said carload of rye to and into the state of Pennsylvania; that while it was in the course of transportation from and out of the state of Iowa to and into the state of Pennsylvania, for transportation by it as a common carrier for hire, out of the state of Illinois into and through the state of Illinois into and through the states of Indiana and Ohio into the state of Pennsylvania, it was engaged in, and was an instrument of commerce between the aforesaid states; and that therefore, the supposed law and the statutes of the state of Illinois, upon which said action is based, is null and void, by reason of be-

ing repugnant and contrary to the constitution of the United States, conferring upon congress the power to regulate commerce among the several states, and to the statute of the United States made and provided.

To the plea of *nil debit* the plaintiff replies *similiter;* and to the special plea it has filed a general demurrer. The demurrer to the special plea raises directly the constitutionality of the act passed by the Illinois legislature.

It is well settled that upon a demurrer to a plea the court must examine the whole record, and should decide in favor of the party who ought to prevail upon the whole of said record. I am of the opinion that the declaration itself is demurrable for the following reasons, to-wit: 1. The action is not brought for the use of the county where it is alleged the default and refusal to comply with the statute took place as provided by the statute in question. 2. Said declaration does not allege in either count that the defendant company failed to provide suitable appliances for unloading, weighing and transferring the rye in question from one car to another with mixing or in any way changing the identity of the property so transferred, and that it failed to accurately weigh said rye in suitably covered hopper scales; and failed or refused to give a receipt or bill of lading used as the basis of the freight contract, containing the actual net weight of the entire contents of said carload of rye.

Section 194 of the statute provides that "Any railroad company neglecting or refusing to comply promptly with *any and all* of the requirements of either sections 1 or 2 of this act shall be liable."

This being a *quasi*-criminal proceeding to recover a penalty, it must be construed strictly in favor of the defendant. Such a construction would require the plaintiff to allege in its declaration that the defendant failed or refused to comply with *all* of the requirements of said section.

The only allegation in either count of said declaration upon which they seek to recover the penalty in question is, that the defendant company neglected or refused to issue a receipt or bill of lading, giving and stating the true and correct

weight of said rye.  So that upon these grounds alone I am of the opinion that my finding shall be for the defendant company.  But aside from these technical objections, I am of the opinion that the plaintiff's demurrer to defendant's special plea must be overruled.

I am of the opinion that the act in question is in contravention of the constitution of the United States, and of the interstate commerce act, so far as it applies to or affects the goods and merchandise being shipped from other states, through the state of Illinois, to other states of the United States.

Clause 3, section 8, article 1, of the constitution of the United States declares that the congress of the United States shall have power "To regulate commerce with foreign nations, and among the several states, and with the Indian tribes." This power was reserved and retained by the federal government upon the adoption of the constitution by the several states, and the wisdom of the framers of the constitution in reserving this power to the government, can not be questioned.

Were each state to have the power of regulating commerce between it and sister states inextricable confusion would result.  Each state, in the exercise of this power, would pass such regulations concerning commerce as it deemed for its best interests, independent of the interests of its sister states.  The congress of the United States being vested with this power, it remains for us to ascertain whether there is power vested in the state of Illinois to pass such a law.

It has been maintained by reputable authority that in the absence of federal legislation, the several states may enact laws for the furtherance and facilitation of commerce between states, but it is universally conceded that such legislaiton must facilitate and not obstruct the commerce between states.  Patterson on Federal Restraint on State Action, 124.

It has also been held, and in my opinion, it is undoubtedly the law, that a state may pass laws of local application to that state; and that the same is not an infringement on the rights of congress.

Let us examine the case at bar and determine, whether the

legislation in question is for the facilitation or furtherance of commerce; or whether it is of exclusively local application.

The plea demurred to sets up that the grain in question was shipped from Iowa City, Iowa, to Chicago, to be there transferred from the Chicago, Rock Island & Pacific Railway to the Lake Shore & Michigan Southern Railroad for shipment to Kerrmoor, Clearfield county, Pennsylvania. And the plea being demurred to this state of facts must be taken to be true.

Section 192 of the statute in question requires the defendant company to unload the grain from the car in which it was received into "suitably covered hopper scales, without mixing or in any way changing the identity of the property so transferred and weighed;" and to then endorse upon a receipt or bill of lading, the actual net weight of said grain, as ascertained by weighing same in hopper scales, then reload it upon a car and give such bill of lading to the shipper. Surely this can not be held to be in furtherance or facilitation of commerce. It necessitates the shipping of the car to a side track convenient to such a scale, the unloading of the grain into said scale, the weighing of the grain when so loaded upon said scale, and the replacing it upon the same or some other car; all of which must necessarily occasion loss of time, labor and expense; and all of which must eventually fall upon the shipper. It is a cumbrous, awkward way of ascertaining the weight of the grain in question; and must be, in the opinion of any rational man, a measure which retards and obstructs the quick transmission of merchandise, instead of facilitating the same.

Secondly: Is the law in question local in its application to Illinois? I am of the opinion that if a carload of grain was shipped from Chicago to Cairo in this state, that under the law in question the shipper would have the undoubted right to demand the weighing of the same in a hopper scale, and the endorsement of the weight thus ascertained on a bill of lading. But the law plainly shows upon its face that it applies to and covers not only a case of the shipment of grain from one point in a state to another point in said state, but

to all cases where grain is shipped in any city having not less than fifty thousand inhabitants, no matter what may be the point of original shipment or destination within the state or without. And so far as it does this it is certainly not of local application.

The case presented by the said plea shows that the shipment in this case was originally from Iowa City, in the state of Iowa, and that the destination of said rye was in Pennsylvania; and certainly the law applied to this case can not be of local application.

So far I have discussed this case upon the assumption that there was no legislation of the federal government upon the points covered by the statute in question; but an examination of the inter-state commerce act shows plainly that this is merely an assumption.

Section 7 of the Inter-State Commerce Act, which went into effect in the spring of 1887, a few months before the act of the Illinois legislature in question, provides: ''That it shall be unlawful for any common carrier, subject to the provisions of this act, to enter into any combination, contract or agreement, expressed or implied, to prevent by carriage in different cars, or by other means or devices, the carriage of freights from being continuous from place of shipment to the place of destination.''

This provision of the inter-state commerce act plainly indicates that it is the policy of the Federal government to further and protect in every possible way, the continuous shipment of merchandise without check or hindrance.

Even before the passage of the inter-state commerce act, the supreme court of the United States, in the case of *Wabash, etc., v. Illinois,* 118 U. S. 557, 572, declared that the right of continuous transportation from one end of the country to the other is essential, in the following language:

''It can not be too strongly insisted upon that the right of continuous transportation from one end of the country to the other is essential in modern times to that freedom of commerce from the restraints which the state might choose to impose upon it, that the commerce clause was intended to secure.

This clause, giving to congress the power to regulate commerce among the states and with foreign nations, as this court has said before, was among the most important of the subjects which prompted the formation of the constitution. *Cook v. Pennsylvania,* 97 U. S. 566, 574; *Brown v. Maryland,* 12 Wheat. 419, 446.''

Justice Walker, in the dissenting opinion delivered by him in the case of *Wabash, etc., v. People of Illinois,* 105 Ill. 253, declares in the following language that ''The manifest purpose of that clause (*i. e.* 3 clause, section 8, article 1, of the Federal constitution) was to prevent impositions, burthens and obstructions on articles of commerce passing from one state to another, or such articles passing through states.''

It will thus be seen that one of the strongest supporters of the right of state regulations of commerce, recognizes the object and purpose of the Federal government in preserving the right to regulate commerce between states. It thus appears, not only from the language of the interstate commerce act, but from the construction placed by state and Federal courts upon the intent and aim of the provision of the Federal constitution, that the policy of the Federal government has always been in favor of continuous and unrestricted transmission of property and passengers between the states.

The interstate commerce act, in section seven, makes it an offense to retard continuous shipments by carriage in different cars or other means or devices.

Such being the plain provision of the Federal constitution and Federal enactments, how can it be claimed that any state legislation which compels the unloading, separate weighing, and reloading of grain, can be held to be constitutional?

If the state of Illinois has the right to enact any such legislation in the face of this provision of the interstate commerce act, every other state in the union would have the same right, and the Federal constitution might be set at defiance. That the object and aim of this law was to protect the shipper and to secure to him the correct weight of the merchandise shipped, I have no doubt; and the law, as far as it relates to shipments made within this state to points of destination within this

state, will and should be upheld by our state courts. But when it seeks to affect, as it does in the case at bar, shipments to and from other states, notwithstanding the laudable object of the law, it is in direct conflict with the constitution of the United States and the legislation of congress, as set out in the interstate commerce act.

Counsel for the people have cited to me cases in which it has been held that provisions of a state law regulating the speed of trains and requiring trains to stop at county. seats, were within the police power of the state, and not in conflict with the power preserved by congress of regulating commerce between states. I think a plain distinction can be made between this class of cases and the one under consideration.

State provisions, regulating the rate of speed and the stoppage at county seats, are really in the interests of and for the furtherance of commerce; and while they necessarily sometimes hinder the speed of trains, it is an undoubted fact that they are for the protection of the life, limb and property of passengers. They make commerce more safe and the Federal government has never legislated upon these points. While in the exercise of police power I have no question but that individual states may pass reasonable regulations for both passenger and freight trains, but when congress has once legislated on these same subjects, or indicated by its acts, its policy in reference to the same, if the state legislation is in conflict with the Federal, then in my opinion the local legislation must give way. Even the police power of the state, in the absence of Federal legislation, has its limitations.

Tiedeman's Limitations of Police Powers, 616, lays down the law as follows: "It is impossible for a state regulating the time and manner of making transfers of subjects of commerce transported by railway carriage from one point to another within the state, to extend the application of the regulation to freight that is being transferred to some point beyond the state." It will be found, upon examination, that all of the cases cited by counsel for plaintiff are based—*first*, upon statutes, passed in the exercise of police power, for the protection of the life, limb or property of citizens, where the

Federal authorities have not legislated upon the same; or—*secondly*, are statutes of purely local application, or—*thirdly*, laws passed by the state for the facilitation and furtherance of rapid transit of passengers or merchandise. The case at bar, in my opinion, does not fall under any of these classes.

The position I have taken in this matter is, I believe, abundantly sustained by the following, among other authorities: *County of Mobile v. Kimball*, 102 U. S. 691–702; *Welton v. Missouri*, 91 U. S. 275–280; *Original Package Case*, 135 U. S. 108; *Wabash, etc., Ry. Co. v. Illinois*, 118 U. S. 577. In *Council Bluffs v. K. C., St. J. & C. B. R. Co.*, 45 Iowa, 349, it was sought, by a statute of the state of Iowa, and an ordinance of the city of Council Bluffs, to compel the defendant railway company to receive and transfer its passengers and freight in the city of Council Bluffs instead of running them across the river to Omaha; and the court, in discussing the several authorities in which it had been held that the levying of licenses or taxes upon railroads and others by state law, was unconstitutional, as imposing a burden upon the transportation of interstate commerce, declares that, "The same principles upon which the statutes were held invalid apply to the statutes creating burdens or imposing restrictions of a different character. Commerce may suffer no more from a law requiring a direct tax to be paid thereon into the state treasury, than from a regulation under which charges will be exacted by individuals, as would be the case of transferring freight from the cars of one railroad to those of another at state lines when the connecting roads form continuous lines over which freight may be carried without change of cars. And a regulation of the state whereby the most speedy transit is prevented may be a greater burden upon interstate commerce—a greater embarrassment to it, than taxes of the character held invalid in the cases above cited. Celerity in the transportation of passengers and freight is now imperatively demanded by the business of the country; every impediment thereto is a burden upon commerce. State statutes producing such results are, under the authorities cited, clearly in conflict with the constitution of the United States. Subjects of

legislation of this character, which are in their character national, affecting the whole country, and confided by the constitution to the general government, are exclusively within the legislative control of congress.''

In the case of *Stanley v. Wabash, St. L. & P. R. R. Co.,* 42 Am. & Eng. R. R. Cas. 328, the supreme court of Missouri held that ''A statute requiring a railroad company to furnish double deck cars for transporting sheep, was unconstitutional as to an interstate shipment.''

In *H. & St. J. R. R. Co. v. Houston,* 95 U. S. 473, a statute of Missouri, prohibiting the entry of Texas cattle at certain times of the year was held bad, as being in violation of the commerce provision of the constitution.

In *Norfolk & W. R. Co. v. Commonwealth* (Va.), 13 S. E. 345, the court held that a statute of the state of Virginia, prohibiting the running of freight trains within certain hours on Sunday, was bad, as being in conflict with the commerce provision of the constitution of the United States.

After careful consideration of the matter, I am of the opinion that this statute, so far as it relates to shipments made from other states through the state of Illinois to other states of the United States; and in so far as it relates to the cases presented by the pleas, is unconstitutional and void; and therefore the demurrer to said plea should be overruled.