SIMONTON, Circuit Judge.
This is a bill in equity, filed by complainant, a corporation of the state of California, against S. W. Vance, who is state commissioner under the dispensary law, and W. N. Bahr and others, who are state constables appointed to put this law in execution. The bill alleges that the complainant is the owner of vineyards in the state of California, and that it manufactured from grapes of such vineyards well-known pure wines, brandies, and other liquors, particularly of clarets, Rhine wine, Burgundies, and champagne; that by its traveling agent the complainant took orders from certain citizens and residents of the state of South Carolina, to deliver to each of them certain original packages of wines, etc., products of its vineyards, filled said orders, and shipped from San Francisco to Charleston, S. C., by rail, a car load of its products, containing 73 separate original packages for each of its said customers, all marked with its name and address in California, adopting this mode of shipping by car load in order to obtain a large reduction in freight; that the goods so shipped arrived in Charleston, passing through the hands of several common carriers in continuous route, and thereupon were seized, without warrant, by defendants Bahr and Scott, and 60 of the packages were shipped by said constables to Columbia, to John F. Gaston, then the state commissioner, got into his hands and then into the hands of his successor, S. W. Vance, with full notice of *787 íe unlawful seizure, and that Yance, notwithstanding, refuses to eliver them to complainant or its agent after repeated demands, nd threatens to convert and sell the same to citizens of South Carona; that these same constables and others, claiming like authority, ireaten to seize in like manner all wines shipped by complainant ito this state, wherever found and for whatever purpose shipped, rriving in said city of Charleston, and in like manner to ship and dever the same to said S. W. Yance, who likewise threatens to conert the same, to the great damage of complainant, and to the obtruction and destruction of its lawful business and interstate comíerce and trade in its wines, etc., with citizens and residents of South Carolina. The bill then alleges the shipment of another importation of wines, etc., in separate original packages from its ineyards in California, upon orders from residents of South Carolina, the arrival of the same in South Carolina, and the wrongul seizure of the same by state constables; that other orders .ave been obtained from other residents of South Carolina for eparate original packages, and that upon such orders complainant proposes to ship such packages to South Carolina in due course of nterstate commerce; and that, in the future, it intends to seek simiar orders, and to ship thereupon similar original packages into the tate of South Carolina. The bill further alleges that it intends, n the course of its business, further, and in addition to such shipnents so ordered by customers in advance, to ship also from San francisco, Cal., to its agent in the state of South Carolina, and to store and warehouse in South Carolina, and to sell in the state of South Carolina, in the original unbroken packages as imported, as iforesaid, to residents in South Carolina, its wines and liquors, predicts of its vineyards, in the due and lawful exercise of its rights mder the constitution and laws of the United States, and that the lefendants threaten to seize, take, and carry away, convert and sell all such shipments. The bill then charges that by the dispensary act of 1897, under which the defendants seek to justify their iction, all wines, beers, ales, alcoholic and other intoxicating liquors ire the subjects of lawful manufacture, barter, sale, export, and import in the state of South Carolina, and have been and are being and will continue to be lawfully used and consumed as a beverage by citiaens and residents of the state of South Carolina, and that the products of its vineyards are lawful subjects of interstate and foreign trade and commerce. The bill then charges that the said dispensary law, in so far as it authorizes the acts of the defendants, or in any way attempts to abridge the right of importation of the products of complainant’s vineyards into this state, and there to sell in original packages, or in any wise hinders and prevents its intercourse, commerce, and trade with citizens and residents of South Carolina in the products of its vineyards in such original packages, is in conflict with the constitution of the United States, and is null and void. The bill then alleges facts sustaining the jurisdiction of this court and securing the jurisdiction of the United States supreme court, and prays a temporary, to be followed by a permanent, injunction.
Upon the filing of the bill a rule was issued against the defendants *788 to show cause why the injunction prayed for in the bill be not grani ed. The return sets out three jurisdictional exceptions: Firs! that the bill presents no question arising under the constitution an< laws of the United States; second, that the bill is defective in its alie gations, and does not state a case coming within the jurisdiction o this court; third, that the bill presents no case for the jurisdictioi of a court of equity, as the plaintiff has a plain, adequate, and com píete remedy at law. The bare inspection of the bill shows these ob jections to be unfounded. The return then addressed itself to th merits. It sets out clearly that the shipments made by complainan ■were made by bill of lading to a gentleman in this state, in this be half selected as the agent of complainant, for distribution of tin packages and perhaps the receipt of the purchase money. It thei admits the main facts of the bill, and charges that the shipment: made by complainant and those contemplated by it, and the .course o: dealing in the future which it intends, are"in contravention of the ac of assembly of 1897, the amendment to the dispensary law, and that under that act and the other acts which it amends, the course anc action of the state officials were justified, and were right and proper
This case brings up squarely the question: Has a 'producer oi alcoholic liquors in another state the right, under the constitutioi of the United States, in the present condition of the law of South ■Carolina, to ship into that state his products in original packages, and to sell them in the original packages, either upon orders seni in advance of shipment or upon purchases made after shipment and arrival? The question is one of grave importance. The very able and exhaustive arguments of counsel on both sides have put the ■court in possession of every argument which can be used upon it. They have received the careful consideration which they and the question to which they were addressed deserve.
Section 8, art. 1, of the constitution of the United States declares:
“The congress shall have power to * * * regulate commerce with foreign ■nations and among the several states, and with the Indian tribes. * •’ *”
The supreme court of the United States have now established by a current of decisions, which cannot be misunderstood, that under this section congress alone has the right to fix, prescribe, and regulate interstate commerce and foreign commerce, and that no one of the states can in any way interfere with such commerce or prescribe any regulation thereof without the consent of congress. While, by virtue of its jurisdiction over persons and property within its limits, .a state may provide for the security of lives, limbs, health, and comfort of persons, and the protection of property so situated, yet a subject-matter which has been confided exclusively to congress by the constitution is not within the jurisdiction of the police power of the state unless placed there by congressional action. Henderson v. Mayor, 92 U. S. 259; Railroad Co. v. Husen, 95 U. S. 465; Walling v. People, 116 U. S. 466, 6 Sup. Ct. 454; Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592. Inasmuch as interstate commerce, consisting in the transportation, purchase, sale, and exchange of commodities, is national in its character, and must be governed by a uniform system, so long as congress does not pass any law to regulate *789 it or allows the state to do so, it thereby indicates its will that such ommerce shall be free and untrammeled. Mobile Co. v. Kimball, 102 U. S. 691; Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091;. Wabash, St. L. & P. Ry. Co. v. People, 118 U. S. 557, 7 Sup. Ct. 4.
The application of this doctrine to the effect of state legislationpon the importation of alcoholic liquors into a state came up for discussion and decision in Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681. That case arose under the prohibition laws of Iowa. Section 1523 of the Code of Iowa provided:
“No person shall manufacture or sell by himself, clerk, steward or agent, directly or indirectly, any intoxicating liquors, except as hereinafter provided. And the keeping of intoxicating liquor with intent upon the part of the owner thereof or any person acting under his authority or by his permission, to sell the same within this state, contrary to the provisions of this chapter, is hereby prohibited, and the intoxicating liquor so kept, together with the vessels in which it is contained, is declared a nuisance and shall be forfeited and dealt with as hereinafter provided.”
Chapter 71, Acts Iowa 1888, provided:
“That after this act takes effect no person shall manufacture for sale, sell,, keep for sale, give away, exchange, barter or dispense any intoxicating liquor for any purpose whatever, otherwise than is provided in this act. Persons holding permits as herein provided shall be authorized to sell and dispense intoxicating liquors for pharmaceutical and medicinal purposes, and alcohol for specified chemical purposes, and wine for sacramental purposes, but for m> other purposes whatever.”
The act then provides for the issue of permits for this purpose by the district court of the county, which permits hold good for one year.
These provisons being in full force, Leisy & Co., brewers in Peoria,. Ill., shipped into Iowa, by rail, to Keokuk sundry barrels of beer in-original packages, and sold and offered for sale in Keokuk, only in unbroken original packages, this beer. Thereupon it was seized and held subject to the laws of Iowa above quoted. The cause went up through the several state courts into the supreme court of the United States. By that court the case was held under deliberation, and finally the opinion was pronounced by the chief justice as the organ of the court. The points to be decided are thus put:
“That ardent spirits, distilled liquors, ale, and beer are subjects of exchange,, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of the courts, is not denied. Being thus articles of commerce, can a state, in the absence of legislation on the part of congress, prohibit their importation from abroad or from a sister state, or, when imported, prohibit then- sale by the importer?”
In answering these questions the court goes into a full and elaborate examination of all the authorities. The conclusion is expressed in these words:
“The plaintiffs in error are citizens of Illinois, are not pharmacists, and have no permit [the prerequisites of the Iowa act], but import beer into Iowa,, which they sell in original packages. Under our decision in Bowman v. Railway Co. [125 U. S. 465, 8 Sup. Ct. 689, 1062], they had the right to import the beer into that state, and in the view we have expressed they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time we hold that, in the ah- *790 sense of congressional permission to do so, the state had no power to interfere by seizure or any other action, in prohibition of importation and sale by the for eign or nonresident importer.”
Upon the publication of this opinion, the congress, recognizing its force, enacted the act of August 8, 1890, commonly known as tht “Wilson Act.” That act is in these words:
“That all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subjéct to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.”
The case of Leisy y. Hardin is discussed in Plumley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154, and in Emert v. Missouri, 156 U. S. 321, 15 Sup. Ct. 367, in which case, also, the act of 1890 is mentioned.
The controlling question in the case before us is: How does the Wilson act affect the Sonth Carolina statute? In the recent case of Scott y. Donald, 165 U. S. 58, 17 Sup. Ct. 265, a case from this circuit under the dispensary law as it stood before the passage of the present act, the supreme court discussed the dispensary law, and condemned it. They hold that the Wilson act did not protect it. This case of Scott v. Donald was brought because of the seizure and confiscation of certain alcoholic liquors, products of other states, imported by the plaintiff for his personal use. The conclusion of the supreme court, after full discussion of all the cases bearing upon the question, is:
“In the light of these eases, the act of South Carolina of January 2, 1895 [dispensary law], must, as to those of its provisions which affect the plaintiff in the presént suits, be condemned.” 165 U. S. 99, 17 Sup. Ct. 272.
This act of 1895 was amended in 1896, and when this decision was published the law was further amended in 1897, and this case will turn on these amendments. Have the amendments cured the objectionable features in the act of 1895? In Scott v. Donald, the supreme court say of the act of 1895:
“It is important to observe that the statute does not purport to prohibit either the importation, the manufacture, the sale, or the use of intoxicating liquors. The first section does indeed make it penal to manufacture, sell, barter, deliver, store, or keep in possession any spirituous, malt, vinous, fermented, brewed, or other liquors, which contain alcohol and are used as a beverage, except as hereinafter provided, and declares all such liquors contraband. * * * Yet these enactments are not absolute, but are made subject to the subsequent provisions of the act. When these provisions are examined we find that, so far from the importation, manufacture, and sale of such liquors being prohibited, these operations are turned over to state functionaries, by whom alone, or under whose direction, they are carried on.”
Tbe amending act of 1897 contains provisions almost identical in language, exactly identical in effect. The act of 1897 amends section 3 of the act of 1895, and still further amends sections 15 and 23, which had been amended by the act of 1896, removing from these last two sections features of discrimination. But these changes in *791 no wise meet the criticism of the supreme court of the act of 1895. This criticism was not on these discriminations only. The court says:
“In view of these and similar provisions, it is indisputable that, whatever else may he said of this act, it was not intended to prohibit the manufacture, sale, and use of intoxicating liquors. On the contrary, liquors and wines are recognized as commodities which may be lawfully made, bought and sold, and must therefore be deemed the subject of foreign and interstate commerce.”
Section 2 provides that the state board of control shall purchase all liquors for sale in this state. Section 3, after providing for the appointment of a commissioner, prescribes how he shall furnish liquors to the county dispensers for sale. Section 7 provides for county dispensers, who shall sell liquors. Section 15 provides for granting licenses to manufacture liquors. Section 23 provides for a regular quarterly report from all licensed distillers. These sections in the act of 1897 sustain the criticism of the supreme court. It is clear that, before the state can forbid the importation and sale in original packages of alcoholic liquors, it must declare the manufacture, sale, and use as a beverage of all alcoholic liquors to be contraband and forbidden, and so take them out of the category of legitimate articles of commerce. She cannot, for her own purposes, treat these liquors as the subject of foreign and interstate commerce, and declare them not to be such to the rest of the world.
The appalling statistics of misery, pauperism, and crime which have their origin and owe their existence to the use or abuse of alcoholic spirits are the justification for police regulations with regard to them, and place them under the control of the police power. Considerations of public safety, the supreme law, override every other, and measures, however drastic, which prevent the existence of this evil, will be sanctioned and enforced. But when the state herself, for her own purposes, furnishes to her citizens these alcoholic spirits, encourages them in their use, puts them at convenient places within her territory for the supply and distribution of them, enters largely into the business, calculating the profit therefrom as aiding state, county, and municipal treasuries, regulations which would properly be attributable to the police power if used in suppression of the traffic assume the form of measures tending to support the state’s monopoly in the business, act as restrictions upon commerce, and infringe the federal constitution. If all alcoholic liquors, by whomsoever held, are declared contraband, they cease to belong to commerce, and are within the jurisdiction of the police power. But so long as their manufacture, purchase, or sale, or their use as a beverage in any form or by any person, are recognized, they belong to commerce, and are without the domain of the police power. The act of 1897, like the act of 1895, is condemned on these principles. Neither of them is within exercise of the police power.
But, while it is true that some of the discriminating features are now removed from the dispensary,—features admitted to be fatal to its constitutionality,—one at least still remains. The markets of this state are closed to the producers in other states. Minnesota v. Barber, 136 U. S. 326, 10 Sup. Ct. 862. They are closed, it is true, *792 to the producers in this state. But the latter may be under the control of the laws of commerce within the state. The former are protected by the interstate commerce law. It is no justification that laws in conflict with interstate commerce press equally on the citizen and the stranger. Minnesota v. Barber, supra. A resident of the state may, under the present dispensary law, send his orders to a producer outside of the state for liquors for his own personal use and consumption, and a limited importation within a restricted period and under an absolute condition is allowed such resident. The producer is limited to this. He cannot import his goods into this state in any other way. The condition for such importation is this: Any resident who desires to import liquor for his own personal use and consumption shall first certify to the chemist of the South Carolina College the quantity and kind of liquor he wishes to import, with the name and address of the person from whom he wishes to purchase, stating, also, that such proposed purchaser will forward to Columbia, S. C., to said chemist, a sample of the liquor. On receipt of the sample the chemist immediately proceeds to test it, and, if found to be pure and free from any poisonous, hurtful, or deleterious matter, he issues a certificate to that effect, giving names of proposed consignor and consignee, and the quantity and kind of liquor to be imported, sends it free of expense and postpaid to the consignor, and the liquor can be shipped within 60 days after the date of the certificate, which can be used once only.
It will be noted that the use of alcoholic liquors as a beverage is not prohibited, nor is their importation for personal use forbidden, provided such beverages are free from “poisonous, hurtful, and deleterious matter,” other than the alcohol in them. The act provides the essential and conclusive test on this point,—the certificate of the chemist of the South Carolina College. The act also declares all alcoholic liquors not tested by the chemist of the South Carolina College, and so, found to be free “from poisonous, hurtful, and deleterious matters,” necessarily matters other than the alcoholic ingredients, to be of a detrimental character, and their use and consumption to be against the morals, good health, and safety of the state; that is to say, without any'regard whatever to their real character, the presence or absence of the certificate is the sole test. This can be sustained only on the fact that it is a valid inspection law.
There can be no doubt that a state can enact laws protecting its citizens in the purchase of articles, imported or domestic, from purchasing something they did not intend to buy, or adulterated, so as to threaten disease or death. Pluniley v. Massachusetts, 155 U. S. 461, 15 Sup. Ct. 154. But it must be a law which protects or at least tends to protect the citizen. It must give him security. If it does not do so absolutely, still it must contribute to secure him. The mode of inspection in this act is bv sample. Let it be supposed that the sample has been furnished, has been inspected, has been approved, and that the certificate has been sent to the consignor; what sort of assurance does it give the citizen that this liquor he thereupon receives accords with, comes up to, or in any wise re *793 sembles the sample? What protection does it give the citizen from fraud from a failure to send liquor according to sample? Hone whatever. It only subjects him to the seizure and forfeiture of his goods, if, perchance, they should be inspected. The fraudulent seller is out of reach. Upon what, then, must the citizen rely? He can only rely upon the business character, standing, and integrity of the person from whom he buys, without any regard whatever to the inspection. This so-called inspection, furnishing no security to the citizen, cannot thereby be justified. It can operate only as a restriction upon, and hindrance and burden to, his acknowledged right to import for his personal use. It is thus an interference with interstate commerce, and in itself void.
The language in Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, has some application here:
“If a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of courts so to abridge them, and thereby give effect to the constitution.”
The same mode of inspection by sample would seem to bé used in all the liquors issued by the state commissioner. 22 St. at Large 541.
In Scott v. Donald the supreme court, discussing a similar feature in the act of 1895, says:
“To empower a state chemist to pass upon what the law calls ’the alcoholic purity’ of such importations by chemical analysis can scarcely come within any definition of a reasonable inspection law.”
If, then, this mode of inspection be not reasonable, and be futile, it is a burden on interstate commerce, and in itself makes the provision void. Railroad Co. v. Husen, 95 U. S. 465; Walling v. Michigan, 116 U. S. 446, 6 Sup. Ct. 454; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862; Brimmer v. Rebman, 138 U. S. 78, 11 Sup. Ct. 213.
It is manifest, therefore, that the same conclusion must be reached with regard to the dispensary act of 1897 which was reached by the supreme court of the United States as to the act of 1895,—that it is not within the scope and operation of the Wilson act. This being the case, the law laid down in Leisy v. Hardin controls this case, and the attempt to forbid the importation and sale of spirituous liquors in original packages must fail. The decision of the supreme court of the United States must control all circuit courts. By this decision it is clear that, so long as the state herself engages in the business of importing and selling alcoholic liquors for the purposes of profit, so long as she recognizes that the use of alcoholic liquors as a beverage is lawful and can be encouraged, so long as she seeks a monopoly in supplying these liquors for that use, and in this way looks to an increase in her revenue, she cannot, under her constitutional obligations to the other states of this Union, forbid, control, hinder, and burden commerce in such articles between their citizens and her own.
Let a temporary injunction issue as prayed for in the bill.