## RAILROAD COMPANY *v.* HUSEN.

1. The statute of Missouri which prohibits driving or conveying any Texas, Mexican, or Indian cattle into the State, between the first day of March and the first day of November in each year, is in conflict with the clause of the Constitution that ordains "Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes."

2. Such a statute is more than a quarantine regulation, and not a legitimate exercise of the police power of the State.

3. That power cannot be exercised over the inter-state transportation of subjects of commerce.

4. While a State may enact sanitary laws, and, for the purpose of self-protection, establish quarantine and reasonable inspection regulations, and prevent persons and animals having contagious or infectious diseases from entering the State, it cannot, beyond what is absolutely necessary for self-protection, interfere with transportation into or through its territory.

5. Neither the unlimited powers of a State to tax, nor any of its large police powers, can be exercised to such an extent as to work a practical assumption of the powers conferred by the Constitution upon Congress.

6. Since the range of a State's police power comes very near to the field committed by the Constitution to Congress, it is the duty of courts to guard vigilantly against any needless intrusion.

ERROR to the Supreme Court of the State of Missouri.

An act of the legislature of Missouri, approved Jan. 23, 1872, 1 Wagner's Stat. 251, provides as follows: —

"SECTION 1. No Texas, Mexican, or Indian cattle shall be driven or otherwise conveyed into or remain in any county in this State, between the first day of March and the first day of November in each year, by any person or persons whatsoever: *Provided*, that nothing in this section shall apply to any cattle which have been kept the entire previous winter in this State: *Provided further*, that when such cattle shall come across the line of this State, loaded

upon a railroad car or steamboat, and shall pass through this State without being unloaded, such shall not be construed as prohibited by this act; but the railroad company or owners of a steamboat performing such transportation, shall be responsible for all damages, which may result from the disease called the Spanish or Texas fever; should the same occur along the line of such transportation; and the existence of such disease along such route shall be *prima facie* evidence that such disease has been communicated by such transportation."

"SECT. 9. If any person or persons shall bring into this State any Texas, Mexican, or Indian cattle, in violation of the first section of this act, he or they shall be liable, in all cases, for all damages sustained on account of disease communicated by said cattle."

Husen brought this action against the Hannibal and St. Joseph Railroad Company for damages alleged to have been done him by means of the company's violation of the foregoing act.

On the trial in the Circuit Court for Grundy County it was, among other things, objected by the company that the act was in violation of that part of sect. 8 of art. 1 of the Constitution of the United States which provides that Congress shall have power " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." This objection having been overruled, there was a judgment for the plaintiff; which the Supreme Court on appeal affirmed, holding that the act was " not contrary in any wise, in regard to this case, to the Constitution of the United States."

The company then brought the case here.

*Mr. James Carr* for the plaintiff in error.

That portion of the eighth section and first article of the Constitution of the United States, which provides that Congress shall have power " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes," confers exclusive power on Congress. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Passenger Cases*, 7 How. 283; *Ex parte McNiel*, 13 Wall. 236; *Case of the State Freight Tax*, 15 id. 232; *Railroad Company* v. *Fuller*, 17 id. 560; *Henderson et al.* v. *Mayor of New York et al.*, 92 U. S. 259; *Chy Lung* v. *Freeman et al.*, id. 275; *In the Matter of Ah Fang*, 1 Cent. Law Jour. 516.

The act in question discriminates against certain property which may be brought from Texas into Missouri, and absolutely prohibits bringing it into the State between the first day of March and the first day of November in each year. This is no police regulation. - If it required an inspection of the cattle at the State line by some competent person, to ascertain their condition, and permitted them, if found free from disease, to be carried into the State, it would not be obnoxious to the objection of regulating inter-state commerce, or of discriminating against a certain species of property coming from a particular section. In its present shape, it is a regulation of inter-state commerce as much as is the statute of California, which, *inter alia*, prohibits vessels from landing "a lewd or debauched woman," without first giving the required bond. *Chy Lung* v. *Freeman et al.*, 92 U. S. 275.

*Mr. M. A. Low, contra.*

The act, although it may affect, does not in any proper sense regulate, commerce. "Not every thing which affects commerce is a regulation of it, within the meaning of the Constitution." *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Munn* v. *Illinois,* 94 U. S. 113; *Gibbons* v. *Ogden,* 9 Wheat. 1; *Passenger Cases,* 7 How. 283; *Slaughter-House Cases,* 16 Wall. 36.

Whilst the power to regulate commerce is granted to Congress, that of establishing interior police regulations belongs to the States. The latter, in conferring the power over inter-state commerce, never delegated to Congress that of making police regulations; yet, in exercising the granted power, Congress may incidentally affect or even abrogate those regulations. On the other hand, in establishing them, a State may incidentally affect commerce; but they, when not in conflict with any act of Congress, are valid. These powers are distinct and separate; but it is no objection to a regulation made in pursuance of one of them that it would be appropriate to the exercise of the other. *Gibbons* v. *Ogden,* 9 Wheat. 1; *City of New York* v. *Miln,* 11 Pet. 102; *Slaughter-House Cases,* 16 Wall. 36; *Foster* v. *Master and Wardens of the Port of New Orleans,* 94 U. S. 246; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Ex parte McNiel,* 13 Wall. 236; Story, Const., sect. 1070.

" The legislature may, no doubt, prohibit railways from carrying freight which is regarded as detrimental to public health or morals, or the public safety generally." *Thorpe* v. *Rutland & Burlington Railway*, 27 Vt. 140. The power of the States to pass quarantine and inspection laws has never been questioned, and it includes that of prescribing the necessary regulations, as well as the subjects to which they may be applied. The right to impose restraints upon the use and disposal of articles found by experience or upon inspection to be injurious to the health, morals, or general welfare of her citizens belongs to the State. The act is in the nature of a quarantine regulation, and, as such, is valid. *Gibbons* v. *Ogden*, 9 Wheat. 1; *Brown* v. *Maryland*, 12 id. 419; *Willson* v. *The Blackbird Creek Marsh Co.*, 2 Pet. 245; *City of New York* v. *Miln*, 11 id. 102; *Holmes* v. *Jennison*, 14 id. 615; *License Cases*, 5 How. 577; *Passenger Cases*, 7 id. 283; *Cooley* v. *Board of Wardens*, 12 id. 319; *License Tax Cases*, 5 Wall. 462; *Pervear* v. *Commonwealth*, id. 475; *United States* v. *Dewitt*, 9 id. 41; *Ex parte McNiel*, 13 id. 236; *Case of the State Freight Tax*, 15 id. 279; *Slaughter-House Cases*, 16 id. 36; *Railroad Company* v. *Fuller*, 17 id. 560; *Munn* v. *Illinois*, 94 U. S. 113; *Foster* v. *Master and Wardens*, id. 246; *City of St. Louis* v. *Boffinger*, 19 Mo. 13; *Yeazel* v. *Alexander*, 58 Ill. 254; Cooley, Const. Lim. 584; Potter's Dwarris, 457.

MR. JUSTICE STRONG delivered the opinion of the court.

Five assignments of error appear in this record; but they raise only a single question. It is, whether the statute of Missouri, upon which the action in the State court was founded, is in conflict with the clause of the Constitution of the United States that ordains: " Congress shall have power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." The statute, approved Jan. 23, 1872, by its first section, enacted as follows: " No Texas, Mexican, or Indian cattle shall be driven or otherwise conveyed into, or remain, in any county in this State, between the first day of March and the first day of November in each year, by any person or persons whatsoever." A later section is in these words: " If any person or persons shall bring into

this State any Texas, Mexican, or Indian cattle, in violation of the first section of this act, he or they shall be liable, in all cases, for all damages sustained on account of disease communicated by said cattle." Other sections make such bringing of cattle into the State a criminal offence, and provide penalties for it. It was, however, upon the provisions we have quoted that this action was brought against the railroad company that had conveyed the cattle into the county. It is noticeable that the statute interposes a direct prohibition against the introduction into the State of all Texas, Mexican, or Indian cattle during eight months of each year, without any distinction between such as may be diseased and such as are not. It is true a proviso to the first section enacts that " when such cattle shall come across the line of the State, loaded upon a railroad car or steamboat, and shall pass through the State without being unloaded, such shall not be construed as prohibited by the act; but the railroad company or owners of a steamboat performing such transportation shall be responsible for all damages which may result from the disease called the Spanish or Texas fever, should the same occur along the line of transportation; and the existence of such disease along the line of such route shall be *prima facie* evidence that such disease has been communicated by such transportation." This proviso imposes burdens and liabilities for transportation through the State, though the cattle be not unloaded, while the body of the section absolutely prohibits the introduction of any such cattle into the State, with the single exception mentioned.

It seems hardly necessary to argue at length, that, unless the statute can be justified as a legitimate exercise of the police power of the State, it is a usurpation of the power vested exclusively in Congress. It is a plain regulation of inter-state commerce, a regulation extending to prohibition. Whatever may be the power of a State over commerce that is completely internal, it can no more prohibit or regulate that which is inter-state than it can that which is with foreign nations. Power over one is given by the Constitution of the United States to Congress in the same words in which it is given over the other, and in both cases it is necessarily exclusive. That the transportation of property from one State to another is a

branch of inter-state commerce is undeniable, and no attempt has been made in this case to deny it.

The Missouri statute is a plain interference with such transportation, an attempted exercise over it of the highest possible power, — that of destruction. It meets at the borders of the State a large and common subject of commerce, and prohibits its crossing the State line during two-thirds of each year, with a proviso, however, that such cattle may come across the line loaded upon a railroad car or steamboat, and pass through the State without being unloaded. But even the right of steamboat owners and railroad companies to transport such property through the State is loaded by the law with onerous liabilities, because of their agency in the transportation. The object and effect of the statute are, therefore, to obstruct inter-state commerce, and to discriminate between the property of citizens of one State and that of citizens of other States. This court has heretofore said that inter-state transportation of passengers is beyond the reach of a State legislature. And if, as we have held, State taxation of persons passing from one State to another, or a State tax upon inter-state transportation of passengers, is prohibited by the Constitution because a burden upon it, *a fortiori*, if possible, is a State tax upon the carriage of merchandise from State to State. Transportation is essential to commerce, or rather it is commerce itself; and every obstacle to it, or burden laid upon it by legislative authority, is regulation. *Case of the State Freight Tax*, 15 Wall. 232; *Ward* v. *Maryland*, 12 id. 418; *Welton* v. *The State of Missouri*, 91 U. S. 275; *Henderson et al.* v. *Mayor of the City of New York et al.*, 92 id. 259; *Chy Lung* v. *Freeman et al.*, id. 275. The two latter of these cases refer to obstructions against the admission of persons into a State, but the principles asserted are equally applicable to all subjects of commerce.

We are thus brought to the question whether the Missouri statute is a lawful exercise of the police power of the State. We admit that the deposit in Congress of the power to regulate foreign commerce and commerce among the States was not a surrender of that which may properly be denominated police power. What that power is, it is difficult to define with sharp precision. It is generally said to extend to making regulations

promotive of domestic order, morals, health, and safety. As was said in *Thorp* v. *The Rutland & Burlington Railroad Co.*, 27 Vt. 149, " it extends to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State. According to the maxim, *sic utere tuo ut alienum non lædas*, which, being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others."  It was further said, that, by the general police power of a State, " persons and property are subjected to all kinds of restraints and burdens, in order to secure the general comfort, health, and prosperity of the State; of the perfect right of the legislature to do which no question ever was, or upon acknowledged general principles ever can be made, so far as natural persons are concerned." It may also be admitted that the police powers of a State justifies the adoption of precautionary measures against social evils. Under it a State may legislate to prevent the spread of crime, or pauperism, or disturbance of the peace. It may exclude from its limits convicts, paupers, idiots, and lunatics, and persons likely to become a public charge, as well as persons afflicted by contagious or infectious diseases ; a right founded, as intimated in *The Passenger Cases*, 7 How. 283, by Mr. Justice Greer, in the sacred law of self-defence.  *Vide* 3 Sawyer, 283.   The same principle, it may also be conceded, would justify the exclusion of property dangerous to the property of citizens of the State; for example, animals having contagious or infectious diseases.   All these exertions of power are in immediate connection with the protection of persons and property against noxious acts of other persons, or such a use of property as is injurious to the property of others.   They are self-defensive.

But whatever may be the nature and reach of the police power of a State, it cannot be exercised over a subject confided exclusively to Congress by the Federal Constitution.   It cannot invade the domain of the national government.   It was said in *Henderson et al.* v. *Mayor of the City of New York et al.*, *supra*, to " be clear, from the nature of our complex form of government, that whenever the statute of a State invades the domain of legislation which belongs exclusively to the Congress of the

United States, it is void, no matter under wherilten of powers it may fall, or how closely allied it may be to povntemabeeded to belong to the States." Substantially the sametril of was said by Chief Justice Marshall in *Gibbons* v. *Ogden*, 9 W pract Neither the unlimited powers of a State to tax, nor any of ar large police powers, can be exercised to such an extent ae to work a practical assumption of the powers properly conferred upon Congress by the Constitution. Many acts of a State may, indeed, affect commerce, without amounting to a regulation of it, in the constitutional sense of the term. And it is sometimes difficult to define the distinction between that which merely affects or influences and that which regulates or furnishes a rule for conduct. There is no such difficulty in the present case. While we unhesitatingly admit that a State may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders; while it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, &c., from entering the State; while for the purpose of self-protection it may establish quarantine, and reasonable inspection laws, it may not interfere with transportation into or through the State, beyond what is absolutely necessary for its self-protection. It may not, under the cover of exerting its police powers, substantially prohibit or burden either foreign or inter-state commerce. Upon this subject the cases in 92 U. S. to which we have referred are very instructive. In *Henderson* v. *The Mayor*, &c., the statute of New York was defended as a police regulation to protect the State against the influx of foreign paupers; but it was held to be unconstitutional, because its practical result was to impose a burden upon all passengers from foreign countries. And it was laid down that, " in whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." The reach of the statute was far beyond its professed object, and far into the realm which is within the exclusive jurisdiction of Congress. So in the case of *Chy Lung* v. *Freeman*, where the pretence was the exclusion of lewd women; but as the statute was more far-reaching, and affected other immigrants, not of any class which the State could lawfully exclude, we held it unconstitutional.

Neither of these cases denied the right of a State, to protect herself against paupers, convicted criminals, or lewd women, by necessary and proper laws, in the absence of legislation by Congress, but it was ruled that the right could only arise from vital necessity, and that it could not be carried beyond the scope of that necessity. These cases, it is true, speak only of laws affecting the entrance of persons into a State ; but the constitutional doctrines they maintain are equally applicable to inter-state transportation of property. They deny validity to any State legislation professing to be an exercise of police power for protection against evils from abroad, which is beyond the necessity for its exercise wherever it interferes with the rights and powers of the Federal government.

Tried by this rule, the statute of Missouri is a plain intrusion upon the exclusive domain of Congress. It is not a quarantine law. It is not an inspection law. It says to all natural persons and to all transportation companies, " You shall not bring into the State any Texas cattle or any Mexican cattle or Indian cattle, between March 1 and Dec. 1 in any year, no matter whether they are free from disease or not, no matter whether they may do an injury to the inhabitants of the State or not ; and if you do bring them in, even for the purpose of carrying them through the State without unloading them, you shall be subject to extraordinary liabilities.". Such a statute, we do not doubt, it is beyond the power of a State to enact. To hold otherwise would be to ignore one of the leading objects which the Constitution of the United States was designed to secure.

In coming to such a conclusion, we have not overlooked the decisions of very respectable courts in Illinois, where statutes similar to the one we have before us have been sustained. *Yeazel* v. *Alexander*, 58 Ill. 254. Regarding the statutes as mere police regulations, intended to protect domestic cattle against infectious disease, those courts have refused to inquire whether the prohibition did not extend beyond the danger to be apprehended, and whether, therefore, the statutes were not something more than exertions of police power. That inquiry, they have said, was for the legislature and not for the courts. With this we cannot concur. The police power of a State cannot obstruct foreign commerce or inter-state commerce

beyond the necessity for its exercise; and under color of it objects not within its scope cannot be secured at the expense of the protection afforded by the Federal Constitution. And as its range sometimes comes very near to the field committed by the Constitution to Congress, it is the duty of the courts to guard vigilantly against any needless intrusion.

*Judgment reversed, and the record remanded with instructions to reverse the judgment of the Circuit Court of Grundy County, and to direct that court to award a new trial.*