## ASBELL v. STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 166. Submitted March 6, 1908.—Decided March 23, 1908.

While the State may not legislate for the direct control of interstate commerce, a proper police regulation which does not conflict with congressional legislation on the subject involved is not necessarily unconstitutional because it may have an indirect effect upon interstate commerce.

Until Congress acts on the subject a State may, in the exercise of its police power, enact laws for the inspection of cattle coming from other States. Reid v. Colorado, 187 U. S. 137.

Congress has not enacted any legislation destroying the right of a State to provide for the inspection of cattle and prohibiting the bringing within its borders of diseased cattle not inspected and passed as healthy either by the proper state or national officials.

A State may not under pretense of protecting the public health exclude the products or merchandise of other States, and this court will determine for itself whether it is a genuine exercise of the police power or really and substantially a regulation of interstate commerce.

Section 27 of Chap. 495 of the laws of Kansas of 1905, prohibiting the transportation of cattle from any point south of the State into the State except for immediate slaughter which have not been passed as healthy by the proper state officials or by the National Bureau of Animal Industry is a proper police regulation within the power of the State, is not in conflict with the act of February 2, 1903, 32 Stat. 791, or the act of March 3, 1905, 33 Stat. 1204, in regard to inspection of cattle, and is not unconstitutional as a direct regulation of interstate commerce.

60 Kansas, 51, affirmed.

THE facts are stated in the opinion.

Mr. Archie D. Neale and Mr. Nelson Case for plaintiff in error: A statute which prohibits the bringing of cattle into the State

without having them first inspected, regardless of whether such cattle are .infected or are perfectly healthy, is not a proper exercise of the police power.

This statute not only interferes with interstate commerce, but also conflicts with the United States statute and the rules and regulations of the Department of Agriculture. In cases of this kind where Congress has legislated on the subject such legislation is exclusive on that subject.

The Secretary of Agriculture has the power and authority, under the Federal statute, to promulgate rules and regulations for the transportation of cattle, and he does so, but the State of Kansas steps in and nullifies his orders by the passage of the statute under consideration, or rather attempts to do so. A statute attempting such a thing is unconstitutional and void.

Commodities which may lawfully become the subject of purchase, sale or exchange are articles of interstate commerce, within the protection of the commerce clause of the Constitution. *Leisy* v. *Hardin*, 135 U. S. 100; *Schollenberger* v. *Pennsylvania*, 171 U. S. 1, *In re Ware*, 53 Fed. Rep. 783; *Donald* v. *Scott*, 74 Fed. Rep. 859; *Sawrie* v. *Tennessee*, 82 Fed. Rep. 615; *In re Schietlin*, 94 Fed. Rep. 272; *Bennett* v. *American Express Co.*, 83 Maine, 236; *Ballock* v. *State*, 73 Maryland, 1; *S. C.*, 23 Am. St. Rep. 559.

A State has not the power to prevent the importation of lawful subjects of commerce. Cases *supra* and *Lyng* v. *Michigan*, 135 U. S. 161; *Hannibal &c. Ry. Co.* v. *Husen*, 95 U. S. 465; *Bowman* v. *Chicago &c. Ry. Co.*, 125 U. S. 489.

In this case defendant brought the cattle in question from the Indian Territory (now Oklahoma) into Kansas and proceeded with them to the railroad and shipped them to Missouri. He was engaged in interstate commerce, and was in possession of a lawful subject of interstate commerce. *State* v. *Duckworth*, 51 Pac. Rep. (Idaho) 456.

If the animals with which defendant was charged with bringing into the State were not diseased, they were lawful subjects of commerce. It was not charged that they were diseased; the

trial court charged the jury that it made no difference whether they were or were not diseased, and the Supreme Court of Kansas agreed with the trial court. Whether an article is or is not a subject of lawful interstate commerce depends upon the intrinsic state or condition of the article, and not upon a mere declaration of a state legislature. *In re Rahrer*, 140 U. S. 545.

This statute being a regulation of commerce under the guise of an inspection law, cannot be upheld, but must be condemned. *State of Minnesota* v. *Barber*, 136 U. S. 313; *Brimmer* v. *Rebman*, 138 U. S. 78; *Gulf. C. & S. F. Ry. Co.* v. *Hefley & Lewis*, 158 U. S. 99, 105.

*Mr. E. L. Burton, Mr. C. E. Pile* and *Mr. W. B. Glasse* for defendant in error:

The regulation of the rights and duties of all persons within the jurisdiction of a State belongs primarily to such State under its reserved power to guard the safety of persons and property within its borders, and even where the subject of such regulations is one over which Congress exercises exclusive control, any action of the State upon the subject which is not a direct interference with rights secured by the Constitution of the United States or by some valid act of Congress must be respected until Congress intervenes. *Patapsco Guano Co.* v. *Board of Agriculture of North Carolina*, 171 U. S. 345; *Minnesota* v. *Barber*, 136 U. S. 313; *M., K. & T. Ry. Co.* v. *Haber*, 169 U. S. 613; *Morgan's La. & Texas R. R. Co.* v. *Bd. of Health of La.*, 118 U. S. 455, and cases cited. See also *Patterson* v. *Kentucky*, 97 U. S. 501; *Kammish* v. *Ball*, 129 U. S. 217, and cases cited.

MR. JUSTICE MOODY delivered the opinion of the court.

A statute of the State of Kansas makes it a misdemeanor, punishable by fine or imprisonment, or both, for any person to transport into the State cattle from any point south of the south line of the State, except for immediate slaughter, without hav-

ing first caused them to be inspected and passed as healthy by the proper state officials or by the Bureau of Animal Industry of the Interior Department of the United States. Sec. 27, ch. 495, Session Laws of 1905. The plaintiff in error was duly charged by information in the state court with a violation of this statute, and found guilty by the verdict of a jury. The conviction was affirmed by the Supreme Court of the State, and the case is now here on a writ of error, allowed by the chief justice of that court. The only Federal question insisted upon in argument is whether the statute was a restriction of inter-state commerce which was not within the power of a State to impose.

The obvious purpose of the law was to guard against the introduction into the State of cattle infected with a communicable disease. It undoubtedly restricts the absolute freedom of interstate commerce in cattle, but only to the extent that all cattle coming to cross the guarded boundary are subjected to inspection to ascertain whether or not they are diseased. If healthy they are admitted, if diseased they are excluded. The validity of such a restriction for such purposes has been frequently considered by this court, and the principles applicable to the settlement of the question have been clearly defined. The governmental power over the commerce which is interstate is vested exclusively in the Congress by the commerce clause of the Constitution, and therefore is withdrawn from the States. It is not now necessary to cite the many cases supporting this proposition, or to consider some expressions in the books somewhat qualifying its generality, because in carefully chosen words it has recently been affirmed by us. At this term, Mr. Justice Peckham, speaking for the court, said: "That any exercise of state authority, in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution is obvious." *Atlantic Coast Line* v. *Wharton,* 207 U. S. 328, 334.

But though it may not legislate for the direct control of inter-state commerce, the State may exercise any part of the legis-

lative power which was not withdrawn from it expressly or by implication by the scheme of government put into operation by the Federal Constitution. It may sometimes happen that a law passed in pursuance of the acknowledged power of the State will have an indirect effect upon interstate commerce. Such a law, though it is essential to its validity that authority be found in a governmental power entirely distinct from the power to regulate interstate commerce, may reach and indirectly control that subject. It was at an early day observed by Chief Justice Marshall that legislation referable to entirely different legislative powers might affect the same subject. He said in *Gibbon* v. *Ogden*, 9 Wheat. 194, 204:

"So, if a State, in passing laws on subjects acknowledged to be within its control, and with a view to those subjects shall adopt a measure of the same character with one which Congress may adopt, it does not derive its authority from the particular power which has been granted, but from some other, which remains with the State, and may be executed by the same means. All experience shows, that the same measures, or measures scarcely distinguishable from each other, may flow from distinct powers; but this does not prove that the powers themselves are identical. Although the means used in their execution may sometimes approach each other so nearly as to be confounded, there are other situations in which they are sufficiently distinct to establish their individuality.

"In our complex system, presenting the rare and difficult scheme of one general government, whose action extends over the whole, but which possesses only certain enumerated powers; and of numerous state governments, which retain and exercise all powers not delegated to the Union, contests respecting power must arise. Were it even otherwise, the measures taken by the respective governments to execute their acknowledged powers, would often be of the same description, and might, sometimes, interfere. This, however, does not prove that the one is exercising, or has a right to exercise, the powers of the other."

Foreseeing cases where national and state legislation based upon different powers might, in their application, be brought into conflict, he, in the same case (p. 211), declared that then "the law of the State, though enacted in the exercise of powers not controverted, must yield," a rule which has constantly been applied by this court. These general principles control the decision of the case at bar. Cattle, while in the course of transportation from one State to another, and in that respect under the exclusive control of the law of the National Government, may at the same time be the conveyance by which disease is brought within the State to which they are destined, and in that respect subject to the power of the State exercised in good faith to protect the health of its own animals and its own people. In the execution of that power the State may enact laws for the inspection of animals coming from other States with the purpose of excluding those which are diseased and admitting those which are healthy. *Reid* v. *Colorado,* 187 U. S. 137.

The State may not, however, for this purpose exclude all animals, whether diseased or not, coming from other States, *Railroad* v. *Husen,* 95 U. S. 465, nor under the pretense of protecting the public health, employ inspection laws to exclude from its borders the products or merchandise of other States; and this court will assume the duty of determining for itself whether the statute before it is a genuine exercise of an acknowledged state power, or whether, on the other hand, under the guise of an inspection law it is really and substantially a regulation of foreign or interstate commerce which the Constitution has conferred exclusively upon the Congress. *Minnesota* v. *Barber,* 136 U. S. 313; *Brimmer* v. *Rebman,* 138 U. S. 78; *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345. Tested by these principles, the statute before us is an inspection law and nothing else, it excludes only cattle found to be diseased, and in the absence of controlling legislation by Congress it is clearly within the authority of the State, even though it may have an incidental and indirect effect upon commerce between the States.

The cause, however, cannot be disposed of without inquiring whether there was at the time of the offense any legislation of Congress conflicting with the state law. If such legislation were in existence the state law, so far as it affected interstate commerce, would be compelled to yield to its superior authority. This question was considered and the national legislation carefully examined in *Reid* v. *Colorado, supra,* and the conclusion reached that Congress had not then taken any action which had the effect of destroying the right of the State to act on the subject. It was there said, p. 148: "It did not undertake to invest any officer or agent of the Department with authority to go into a State, and, without its assent, take charge of the work of suppressing or extirpating contagious, infectious or communicable diseases there prevailing, and which endangered the health of domestic animals. Nor did Congress give the Department authority, by its officers or agents, to inspect cattle within the limits of a State and give a certificate that should be of superior authority in that or other States, or which should entitle the owner to carry his cattle into or through another State without reference to the reasonable and valid regulations which the latter State may have adopted for the protection of its own domestic animals. It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police powers of the States, even when it may do so, unless its purpose to effect that result is clearly manifested." There has, however, been later national legislation which needs to be noticed. Large powers to control the interstate movement of cattle liable to be afflicted with a communicable disease have been conferred upon the Secretary of Agriculture by the act of February 2, 1903, 32 Stat. 791, and the act of March 3, 1905, 33 Stat. 1204. The provisions of these acts need not be fully stated. The only part of them which seems relevant to this case and the question under consideration which arises in it is contained in the law of 1903. In that law it is enacted that when an inspector of the Bureau of Animal Industry has issued a certificate that he has inspected cattle or live stock and found

them free from infectious, contagious or communicable disease, "such animals so inspected and certified may be shipped, driven, or transported . . . into . . . any State or Territory . . . without further inspection or the exaction of fees of any kind, except such as may at any time be ordered or exacted by the Secretary of Agriculture." There can be no doubt that this is the supreme law, and if the state law conflicts with it the state law must yield. But the law of Kansas now before us recognizes the supremacy of the national law and conforms to it. The state law admits cattle inspected and certified by an inspector of the Bureau of Animal Industry of the United States, thus avoiding a conflict with the national law. Rule 13, issued by the Secretary of Agriculture under the authority of the statute, is brought to our attention by the plaintiff in error. It is enough to say now that the rule is directed to transportation of cattle from quarantined States, which is not this case, and that in terms it recognizes restrictions imposed by the State of destination. Our attention is called to no other provision of national law which conflicts with the state law before us, and we have discovered none.

*Judgment affirmed.*