COMMONWEALTH *vs.* GEORGE W. MOORE.

Suffolk.    January 13, 1913. — February 25, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Food. Constitutional Law,* Federal jurisdiction, Interstate commerce, Police power, Separable unconstitutional provision.

The federal statute, 34 U. S. Sts. at Large, 669, 679, providing for the inspection, among other articles of food, of all cattle intended for slaughter for producing food products to be used in interstate or foreign commerce, and exempting from its inspection requirements "animals slaughtered by any farmer on the farm and sold and transported as interstate or foreign commerce," leaves open to State regulation shipments into such State of meat produced outside it by the slaughter of cattle by farmers on their farms.

St. 1912, c. 248, § 1, making certain requirements as to the inspection of carcasses of neat cattle, sheep or swine slaughtered without the Commonwealth and shipped here for human food, is constitutional, being a reasonable police regulation, not conflicting with or encroaching upon any federal regulation, and affecting interstate commerce only incidentally.

Whether those provisions of St. 1912, c. 248, § 1, referring to the size of letters and other details of the stamp to be placed upon the carcasses of certain animals slaughtered outside the Commonwealth for shipment here for human food, are valid, here was not decided, but *it was held,* that, even if they were invalid, the constitutionality of the entire statute would not be affected, they being separable and subsidiary.

Rugg, C. J.   The defendant is charged with a violation of St. 1912, c. 248, § 1, which is as follows: "Carcasses of neat cattle, sheep or swine slaughtered without the Commonwealth shall be deemed unfit for human food and shall not be sold or offered for sale unless they have been inspected at the time of slaughter by an official inspector, and unless, if not condemned, they have been stamped or branded by said inspector in like manner as those inspected by the United States Bureau of Animal Industry for interstate trade.   By 'official inspector' is meant one appointed or approved either (*a*) by the Bureau of Animal Industry of the United States Department of Agriculture; or (*b*) by the State board of health of the State in which the animals are slaughtered; or (*c*) by the local board of health of the city or town in which the animals are slaughtered.   The stamp used by inspectors other than those of the Bureau of Animal Industry of the United States Department of Agriculture shall indicate in letters not less than one fourth of an inch high the name of the city or town in which the animals are slaughtered.   Whoever sells or offers for sale, or has in his possession with intent to sell, a carcass, or any part thereof, required by the provisions of this section to be stamped or branded which has not been stamped or branded as herein provided, shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than sixty days, or by both such fine and imprisonment."

The material facts are that the defendant had in his possession in Boston a veal carcass with intent to sell.   The animal was slaughtered outside the State by a farmer who raised it on his own farm, and who was not maintaining at the time any slaughtering or similar establishment.   The carcass was consigned to N. E. Hollis and Company of Boston, who sold it to the defendant.   It was not inspected at the time of slaughter by an official inspector, nor was it stamped or branded, but was at all times healthy and fit for use as human food.   It is said in the agreed facts that "The Commonwealth admits that the slaughter of the animal was performed in compliance with the requirements of the laws of the United States, as provided by an act of Congress entitled 'An Act making appropriations for the department of agriculture for the fiscal year ending June 30, 1907,' Approved June 30, 1906, (34 U. S. Sts. at Large, 669, 679)."   (See, however, Act of Congress

entitled, "An Act making appropriations for the department of agriculture for the fiscal year ending June 30, 1908." Approved March 4, 1907. 34 U. S. Sts. at Large, 1256, 1265). The Commonwealth also "admits that the present case comes under the exceptions made in said act of Congress in favor of animals slaughtered by a farmer on a farm." We construe these two statements together to mean that the animal was slaughtered by a farmer within the exception of the federal act, for that act contains no regulation for such slaughtering, and there is nothing in the record to show that acting under it the secretary of agriculture has issued any regulation. Moreover, no point in this connection is made by the defendant other than those discussed in this opinion. The single question presented is the constitutionality of St. 1912, c. 248.

Its constitutionality is attacked in two aspects: First, in the light of the statute of the United States just cited, which the Commonwealth admits was in force; and, second, independently of the operation of the federal enactment.

It is urged that the defendant, being not the original consignee under interstate shipment, but a later purchaser after the goods had become commingled with the general mass of property and hence subject with all other domestic property to State laws, *Pervear* v. *Commonwealth*, 5 Wall. 475, 479, is not within the class as to whom the act is unconstitutional, and therefore does not show that its unconstitutional features injure him, and is not in a position to question them. *Southern Railway* v. *King*, 217 U. S. 524, 534. *Darnell* v. *Indiana*, 226 U. S. 390, 398, and cases there cited. In any event, the defendant would have a right to assail the validity of the statute as involving discrimination against articles of commerce shipped from another State. We prefer to treat all questions of constitutionality as open to the defendant.

First. The pertinent provisions of the federal act are that it confers full authority upon the secretary of agriculture to make inspection (*inter alia*) of all cattle before they are "allowed to enter any slaughtering, packing, meat-canning, rendering or similar establishment" for producing food products to be used in interstate or foreign commerce, and to make a post-mortem examination and inspection of carcasses of cattle to be prepared for human consumption, and for an inspection of the establishments where

such slaughtering and preparation is carried on. The act exempts from its inspection requirements "animals slaughtered by any farmer on the farm and sold and transported as interstate or foreign commerce" with certain limitations not here material.

The transportation of food products in interstate and foreign commerce and the enactment and enforcement of regulations to the end that nothing may become the subject of such commerce which is unwholesome, unhealthy or diseased, are within the power of Congress. *Hipolite Egg Co.* v. *United States,* 220 U. S. 45. When Congress prescribes concerning any branch of commerce within its sphere of control, its regulations are paramount and render nugatory State statutes covering the same ground. The power of the State must yield to the exercise of that delegated to the United States. It is only the silence of Congress which clothes with validity State laws concerning subjects in that jurisdictional zone, within the power reserved to the States, and at the same time within the enumerated powers of the federal government. *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 506. *Northern Pacific Railway* v. *Washington,* 222 U. S. 370. *Mondon* v. *New York, New Haven, & Hartford Railroad,* 223 U. S. 1, 55. *Chicago, Rock Island & Pacific Railway* v. *Hardwick Farmers Elevator Co.* 226 U. S. 426, 435. *Yazoo & Mississippi Valley Railway* v. *Greenwood Grocery Co.* 227 U. S. 1. The federal act governs the inspection of all cattle, both alive and dead, prepared for interstate transportation in a slaughtering and similar establishment. But it exempts the individual farmer preparing carcasses of cattle for such transportation. Is this exemption to be interpreted as a determination that such product of the farmer shall be absolutely free in interstate commerce, or is it merely a declaration that, until further action is taken, the subject is outside the scope of the act? It seems to us that the act must be interpreted as having the latter effect. We reach this conclusion on authority, and if not controlled by that, on reason. It has been said that "It should never be held that Congress intends to supersede or by its legislation suspend the exercise of the police power of the States, even when it may do so, unless the purpose to effect that result is clearly manifested." *Reid* v. *Colorado,* 187 U. S. 137, 148. In *Reid* v. *Colorado* the alleged conflict was presented between a federal act which covered the driving on foot or transporting between States

and territories "of any live stock known to be affected with any contagious, infectious or communicable disease" and a State statute which prohibited the bringing into Colorado of cattle from designated parts of Texas without such cattle having been held at some place north of the thirty-sixth parallel of north latitude for ninety days and without having procured from a State officer a certificate that the cattle were free from all contagious and infectious disease and had not been exposed to any such disease within ninety days prior thereto. It was held that the State statute did not cover the same ground as the act of Congress, and was not inconsistent with it. The ground of the decision was that the prohibition by the federal act from interstate commerce of cattle known to be diseased did not prevent a State from regulating by reasonable inspection laws the introduction within its borders of cattle not known to be diseased. Knowledge by the person transporting the cattle of their diseased condition was the test established by the federal act, while under the State statute knowledge as to the actual condition of the cattle was of no consequence. This principle is controlling of the case at bar. Congress did not include the farmer within the purview of its inspection in his preparation of food products for interstate commerce, but expressly exempted him. It did not say, however, that he should be immune from valid police regulations by the several States. It went no further than to say that the federal act did not apply to him. That left the farmer just where he would have been if no federal act had been passed. He is on the same footing as the cattle man in *Reid* v. *Colorado, ubi supra,* who had no knowledge as to the freedom from disease of his cattle.

But if the case at bar is not within the express authority of *Reid* v. *Colorado,* we think on reason the same conclusion must be reached. The protection of the public health manifestly is within the police power of the State. *Commonwealth* v. *Wheeler,* 205 Mass. 384. *Pittsburg & Southern Coal Co.* v. *Louisiana,* 156 U. S. 590, 599. The federal act does not assert expressly nor imply by fair intendment that cattle slaughtered by a farmer are more healthy or less liable to disease than those at a slaughtering establishment. It would be difficult to state any ground on which such a distinction could stand. An inference may be drawn from the federal act that the farmer and retail dealer, so far as concerned

their personal preparation of cattle for interstate commerce, were almost negligible. But whatever may have been the motive of Congress, the rational interpretation of the language used is that it omitted from its provisions the farmer, but did not determine that he was to have especial protection. The State statute does not conflict in any respect with the federal act, but expressly recognizes whatever may be done under it, and gives it the full effect required by the Federal Constitution.

Second. Independently of the federal act, is the Massachusetts statute invalid? The principle in the light of which the constitutionality of all legislation, State as well as national, must be considered, is that "the presumption is in favor of its validity, and that the court will not declare it to be a violation of the fundamental principles of our government, and for that reason void, unless its invalidity is established beyond reasonable doubt." Bigelow, C. J., in *Commonwealth* v. *People's Five Cents Savings Bank*, 5 Allen, 428, 432. This rule has been followed by the United States Supreme Court in passing upon State statutes. In *Atkin* v. *Kansas*, 191 U. S. 207, it was said at 223, "Legislative enactments should be recognized and enforced by the courts as embodying the will of the people, unless they are plainly and palpably, beyond all question, in violation of the fundamental law of the Constitution."

The basis of attack against the constitutionality of this act is that it is an attempt to regulate interstate commerce. The State may enact laws and pass regulations for the preservation or promotion of health, within its borders, which have any reasonable relation to that object, and are not plain invasions of rights secured by fundamental federal law. But it may not, under pretence of protecting health, pass laws which in their essence or in their necessary and natural operation constitute a prohibition of or a direct burden upon foreign or interstate commerce.

The principle is established by numerous decisions of the United States Supreme Court that a State "has the right to legislate for the safety and welfare of its people, and that this right is not taken from it because of the exclusive right of Congress to regulate interstate commerce, except in cases where the attempted exercise of authority by the Legislature is in conflict with an act of Congress, or is an attempt to regulate interstate commerce."

*McLean* v. *Denver & Rio Grande Railway,* 203 U. S. 38, 50, and cases there cited.

A State law, although apparently for the protection of the public health, will be scrutinized as to its results in actual practice to ascertain its essential characteristics, and will not be upheld merely because of its declared purpose. A statute which really operates as an undiscriminating exclusion of the products of other States will not be sustained because under the guise of a health statute. If it is in fact a regulation of interstate commerce in its primary application, then it is invalid regardless of its dress or designation. *Railroad Co.* v. *Husen,* 95 U. S. 465, *Minnesota* v. *Barber,* 136 U. S. 313, *Brimmer* v. *Rebman,* 138 U. S. 78, and *Voight* v. *Wright,* 141 U. S. 62, are illustrations of nominal health laws, which in substance were found to be inhibitions upon the use of products of other States. Nor is it of consequence that the State law is not prohibitory in its nature, provided its effect is to discriminate against the products of other States and in favor of its own. *Commonwealth* v. *Caldwell,* 190 Mass. 355. *Darnell & Son* v. *Memphis,* 208 U. S. 113, and cases there reviewed. *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500. *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. There is, however, a large class of State laws which have been upheld as valid police regulations, although incidentally they bear upon interstate commerce. If such statutes are a genuine exercise of the police power, are general in their operation, and have a rational connection with the end to be accomplished of protecting and promoting the public health, they will be sustained, even though they may affect or burden interstate commerce in some respects. See cases collected in *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at 578. *Chicago, Rock Island & Pacific Railway* v. *Arkansas,* 219 U. S. 453.

In the light of these established doctrines, St. 1912, c. 248, § 1, must be examined. It is plain that it relates exclusively to carcasses of cattle, sheep or swine, slaughtered outside the State. To this extent it appears to be discriminatory and to apply to interstate commerce. But it is in truth only one paragraph of a comprehensive code touching the general subject of meat for food. See R. L. c. 56, §§ 70 to 76; c. 75, §§ 99–108; c. 90, and many acts in amendment thereof which need not be enumerated. The import of all these statutes, considered as a whole, is to regu-

late in considerable detail the cleanliness of the slaughterhouse, the inspection of all animals intended for food and of their carcasses at the time of slaughter, and the stamping thereof as a guaranty of healthfulness. They cover within the realm of the State such inspection with as great minuteness as do the federal acts the same field touching interstate and foreign commerce. It is plain that when St. 1912, c. 248, is read in connection with this general code, it is merely intended to assure to the people of this Commonwealth something like the same freedom from diseased meat for food coming from other States, which is required by the federal act for those branches of interstate commerce over which in this respect the power of Congress has been exerted. The whole body of statute law of the Commonwealth touching that subject manifests a purpose to be complementary to the federal inspection law, and giving it full effect in the domain covered by it, to provide similar inspection for all other meat for food, both that slaughtered here and that which may come from other States without federal inspection.

It is plain, under *Reid* v. *Colorado*, 187 U. S. 137, that a quarantine station might be established at the State line, and reasonable inspection required there before such food product could be admitted. Chapter 248 does not go so far as this. It accepts at face value such inspection as may be required by the law of the State where the slaughtering took place, whatever may be its details.

The circumstance that the legislation affects only property to be sent out of the State or to be received into the State, and thus relates wholly to interstate commerce, is not decisive. A law requiring inspection of hides to be sent out of the State was held to have such relation to the protection of property against theft or fraud as to be valid in *McLean* v. *Denver & Rio Grande Railroad*, 203 U. S. 38. The converse sustaining the validity of laws requiring inspection of cattle brought into the State was held in *Reid* v. *Colorado*, 187 U. S. 137, and in *Asbell* v. *Kansas*, 209 U. S. 251. It is not necessary to inquire whether the provision of St. 1912, c. 248, § 1, as to the size of the letters and other details of the stamp are valid, provided the stamping is done as required by the law of the State where the slaughtering occurred, and we make no intimation about it. If that be treated as invalid provided

the local law is followed, it is so subsidiary a part of the statute as not to invalidate the whole. It is separable from the rest, and the Legislature would probably have enacted the remaining portions of the statute, if the constitutionality of this part had been doubtful. *Mutual Loan Co.* v. *Martell,* 200 Mass. 482, 487. The main purpose of the act is to obtain assurance on the face of the product that it has been inspected under such circumstances as may show that there is nothing dangerous to the public health in its use.

It fairly may be inferred, from the federal acts and our own statutes touching the subject, that it generally is believed that inspection of this sort, in order to be of value, must be made before or at the time of slaughtering, and that such inspection as is practicable at a later time after viscera and hide have been removed would fail to reveal the unhealthy or diseased condition of the animal which make its carcass unfit for food. If this inference be sound and the belief rests upon a foundation of truth, it follows that the only way in which the public health can be protected is by inspection at or before the time of slaughter, an inspection impossible in any jurisdiction save where that takes place. Unless statutes like the one now under consideration are valid, there is no way by which the people of a State can protect themselves against noxious food of this sort. We cannot believe that this is the result of the dual system of government under which we live. It may be urged that as thus interpreted the statute operates in such a way as to prohibit the introduction into this Commonwealth of meat food slaughtered by the farmer from a State in which no general inspection law like our own has been enacted. It may be assumed perhaps that a federal inspector may be available for purposes of inspection, even in such States. But however that may be, the right to interstate commerce is not absolute and unqualified. It is subject to reasonable police regulations in the interest of the public health. The statute does not prohibit the introduction into this Commonwealth of all carcasses of cattle for food. It merely inhibits the sale of those which do not bear some sign or badge of healthfulness made by an inspection at a time and under circumstances when such inspection is efficacious for the detection of disease. There is nothing in the record to indicate, and it certainly cannot be assumed as matter of common knowl-

edge; that inspection potent to discover diseased conditions can be made at any time later than the slaughtering. The real question is whether this is a reasonable regulation fairly adapted to accomplish a result having a direct bearing upon the public health. If it is, the fact that the particular carcass was healthy is of no consequence. *Commonwealth* v. *Wheeler*, 205 Mass. 384.

The validity of the statute is sustained by the principles declared in recent decisions. *Reid* v. *Colorado*, 187 U. S. 137, has been adverted to already. It was approved and its scope amplified in *Asbell* v. *Kansas*, 209 U. S. 251, where a Kansas statute was upheld which forbade the transportation into that State of cattle from any point south of it, except for immediate slaughter, which had not been passed as healthy by the proper State official or by inspectors of the federal bureau of animal industry. There was considered in *Silz* v. *Hesterberg*, 211 U. S. 31, a New York statute which prohibited under penalty the possession of game during the closed season, ten months in length, for taking game in its own territory. This statute was held to be valid and enforceable, against an importer of game lawfully captured in Russia and consigned to Silz in New York, even though a proper system of inspection would have distinguished the Russian black cock from any domestic game bird. In *Savage* v. *Jones*, 225 U. S. 501, it was held after an elaborate review of authorities that a State statute regulating the sale and requiring formula of the ingredients, of a food for stock, was within the police power, although it required statements to be made by manufacturers in other States. *Purity Extract & Tonic Co.* v. *Lynch*, 226 U. S. 192, sustained the validity of a State statute which prohibited the sale within its limits of a harmless beverage which contained a trifling percentage of malt. The same result was reached as to statutes similar in kind in *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, *Patapsco Guano Co.* v. *North Carolina Board of Agriculture*, 171 U. S. 345, 361, *Missouri, Kansas & Texas Railway* v. *Haber*, 169 U. S. 613, *Heath & Milligan Manuf. Co.* v. *Worst*, 207 U. S. 338, *Rasmussen* v. *Idaho*, 181 U. S. 198, and *Smith* v. *St. Louis & Southwestern Railway*, 181 U. S. 248.

In principle, the present statute is indistinguishable from those considered in these cases, and it is governed by the rules there announced. A statute like the one at bar in its operation was

upheld in *Borden's Milk Co.* v. *Board of Health,* 52 Vroom, 218. The contentions of the defendant seem less strong than those advanced in behalf of the importer in *Silz* v. *Hesterberg,* 211 U. S. 31. The statute is plainly distinguishable in essential particulars from that discussed in *Opinion of the Justices,* 211 Mass. 605. The conclusion is that St. 1912, c. 248, is a police regulation which has "real relation to the suitable protection of the people of the State, and is reasonable in its requirements" and hence is not invalid, although incidentally it affects interstate commerce, and it does not conflict with any legislation enacted by Congress. *Savage* v. *Jones,* 225 U. S. 501, 525.

*Exceptions overruled.*

The case was submitted on briefs.

*W. F. Kimball & E. W. Bancroft,* for the defendant.

*D. V. McIsaac,* Assistant District Attorney, for the Commonwealth.