MUST HATCH INCUBATOR CO., Inc., v. PATTERSON, Governor of Oregon, et al.

SAME v. HARTLEY, Governor of Washington, et al.

District Court, D. Oregon. May 14, 1928.

No. 8953.

District Court, W. D. Washington, S. D. May 14, 1928.

No. 341–E.

1. Commerce ⊜12—Subject to paramount authority of Congress, state, under police power, may prevent introduction of diseased animals or plants, though interstate or foreign commerce is involved.

A state may, in the exercise of its police power, make laws and regulations to prevent the introduction into it of diseased animals and plants, the coming of which may expose its inhabitants, stock, or plants to injury or disease, though interstate or foreign commerce is involved, subject, however, to the paramount authority of Congress, if it decides to assume control.

2. Commerce ⊜8(12)—Congress has assumed control of entire field of live poultry transportation from one state to another, invalidating state regulations (21 USCA §§ 120 et seq., 123 et seq.).

Act Feb. 2, 1903 (21 USCA § 120 et seq.), entitled "An act to enable the Secretary of Agriculture to more effectually suppress and prevent the spread of contagious and infectious diseases of live stock, and for other purposes," and Act March 3, 1905 (21 USCA § 123 et seq.), entitled "An act to enable the Secretary of Agriculture to establish and maintain quarantine districts, to permit and regulate the movement of cattle and other live stock therefrom, and for other purposes," both as amended by Act Feb. 2, 1928, to include live poultry, held to evince an intent by Congress to assume control of the entire field of transportation of live poultry from one state to another; hence regulations promulgated by the states of Washington and Oregon, regulating the shipment of baby chicks into state without health certificate, are invalid.

In Equity. Suits by the Must Hatch Incubator Company, Inc., against I. L. Patterson, Governor of the state of Oregon, and others, and against Roland H. Hartley, Governor of the state of Washington, and others, heard together by stipulation. On motions to dismiss and applications for interlocutory injunctions. Motions to dismiss denied and interlocutory injunction granted.

Dey, Hampson & Nelson, of Portland, Or., and Bogle, Bogle & Gates, of Seattle, Wash., for plaintiffs.

I. H. Van Winkle, Atty. Gen., and Willis S. Moore, Asst. Atty. Gen., for defendants Patterson and others.

John H. Dunbar, Atty. Gen., and B. B. Adams, Asst. Atty. Gen., for defendants Hartley and others.

Before GILBERT, Circuit Judge, and BEAN and CUSHMAN, District Judges.

PER CURIAM. Alleging them to be in violation of the commerce clause of the Constitution, these suits were brought, one in Oregon and the other in Washington, to enjoin and restrain the enforcement of board or department regulations of the respective states, prohibiting the shipment or bringing into those states of baby chicks, unless accompanied by an official health certificate showing that they are, and have come, from parent stock which has been found free from bacillary white diarrhea, by application of the agglutination test within 12 months immediately prior to their importation or such other test or tests as may be prescribed or approved by the Bureau of Animal Industry of the Department of Agriculture of the United States. While the regulations of which complaint is made in the two cases are not identical, they do not essentially differ, in so far as the questions presented are concerned. By stipulation, the two cases were heard together.

Plaintiff cites Hannibal & St. Joseph R. Co. v. Husen, 95 U. S. 465, 472, 24 L. Ed. 527; Gibbons v. Ogden, 9 Wheat. 1, 205, 6 L. Ed. 23; Minnesota Rate Case, 230 U. S. 352, 406, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; O.-W. R. & N. Co. v. State of Washington, 270 U. S. 87, 46 S. Ct. 279, 70 L. Ed. 482; Vide, Napier v. A. C. L. R. Co., 272 U. S. 605, 47 S. Ct. 207, 71 L. Ed. 432; Reid v. Colorado, 187 U. S. 137, 23 S. Ct. 92, 47 L. Ed. 108; Chicago, B. & Q. Ry. Co. v. Frye-Bruhn Co. (C. C. A.) 184 F. 15, 21; Asbell v. Kansas, 209 U. S. 251, 28 S. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101.

Defendants in No. 8953 cite Adams v. Lytle (C. C.) 154 F. 876; Chicago, B. & Q. Ry. Co. v. Frye-Bruhn (C. C. A.) 184 F. 15; Evans v. Chicago N. W. R. Co., 109 Minn. 64, 122 N. W. 876, 26 L. R. A. (N. S.) 278; Commonwealth v. Moore, 214 Mass. 19, 100 N. E. 1071; State v. Rasmussen,

7 Idaho, 1, 59 P. 933, 52 L. R. A. 78, 97 Am. St. Rep. 234; Hannibal & St. Joseph R. Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Kimmish v. Ball, 129 U. S. 217, 9 S. Ct. 277, 32 L. Ed. 695; Rasmussen v. Idaho, 181 U. S. 198, 21 S. Ct. 594, 45 L. Ed. 820; Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182; Missouri, Kansas & Texas Ry. Co. v. Haber, 169 U. S. 613, 18 S. Ct. 488, 42 L. Ed. 878; Freeborn v. Smith, 2 Wall. 177, 17 L. Ed. 922; United States v. Heinszen, 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Windsor v. City of Des Moines, 110 Iowa, 175, 81 N. W. 476, 80 Am. St. Rep. 280; Morris v. Duby, 273 U. S. 641, 47 S. Ct. 109, 71 L. Ed. 818; Id., 274 U. S. 136, 47 S. Ct. 548, 71 L. Ed. 966; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199.

Defendants in 341–E cite Thurston v. Carter, 112 Me. 361, 92 A. 295, L. R. A. 1915C, 359, Ann. Cas. 1917A, 389; 1 Halsbury, 365; Holcomb v. Van Zylen, 174 Mich. 274, 140 N. W. 521, 44 L. R. A. (N. S.) 607, Ann. Cas. 1915A, 1241; State v. Bruner, 111 Ind. 98, 12 N. E. 103; Huber v. Mohn, 37 N. J. Eq. 432; Reichie v. Smythe, 80 U. S. (13 Wall.) 162, 20 L. Ed. 566.

[1] It is well settled that a state may, in the exercise of its police power, make laws and regulations to prevent the introduction into it of diseased animals and plants, the coming of which may expose its inhabitants, stock, or plants to injury or disease, although interstate or foreign commerce is involved, subject, however, "to the paramount authority of Congress, if it decides to assume control." Gibbons v. Ogden, 9 Wheat. 203, 6 L. Ed. 23; Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Oregon-Washington R. & N. Co. v. Washington, 270 U. S. 87, 46 S. Ct. 279, 70 L. Ed. 482.

[2] The question for decision is: Has Congress "assumed control" of the entire field of transportation of live poultry from one state to another, in so far as means for the prevention and suppression of dangerous, contagious, infectious, or communicable diseases are concerned? There are two acts of Congress, consideration of which is necessary in determining this question: One, Act Feb. 2, 1903, entitled "An act to enable the Secretary of Agriculture to more effectually suppress and prevent the spread of contagious and infectious diseases of live stock, and for other purposes," 32 Stat. at Large, 791, Comp. Stat. § 8698 et seq. (21 USCA § 120 et seq.), and the other, Act March 3, 1905, entitled "An act to enable the Secretary of Agriculture to establish and maintain quarantine districts, to permit and regulate the movement of cattle and other live stock therefrom, and for other purposes," 33 Stat. at Large, 1264, Comp. Stat. § 8701 et seq. (21 USCA § 123 et seq.).

By the first of these acts the Secretary of Agriculture is authorized and directed to establish such rules and regulations concerning the transportation of live stock from any place within the United States, where he may have reason to believe dangerous, contagious, infectious, or communicable diseases among such live stock may exist, into and through any state or territory as he may deem necessary. It further provides that, whenever any inspector or assistant inspector of the Bureau of Animal Industry shall issue a certificate showing such officer had inspected any cattle or other live stock, which were about to be driven or transported from any such locality to another, as above stated, and had found them free from infectious, contagious, or communicable disease, the animals so inspected and certified may be shipped, driven, or transported from such place into and through any state or territory without further inspection.

By the second of these acts the Secretary of Agriculture is authorized and directed to quarantine any state or territory, or portion thereof, when he shall determine the fact that cattle or other live stock in such state or territory are affected with any contagious, infectious, or communicable disease, and when the public safety will permit make rules and regulations permitting and governing the inspection, disinfection, certification, treatment, handling, and method and manner of delivery and shipment from any quarantined state or territory into another state or territory. This law makes it a misdemeanor to move, or allow to be moved, any live stock from any quarantined state, territory, or quarantined portion of a state or territory, into any other state or territory under conditions other than those prescribed by the Secretary of Agriculture.

Both of these acts were amended on February 7, 1928, to include live poultry. It seems clear, from the language of these acts as recently amended, that Congress intended thereby to give the Agricultural Department supervision of the shipment or transportation of live poultry, from one state to another, in so far as action in order to prevent or lessen the spread of dangerous, contagious, infectious, communicable disease is concerned.

In Oregon-Washington Ry. & Nav. Co. v. Washington, supra, the Supreme Court has so construed a similar law, that of August 20, 1912 (37 Stat. at Large, 315, c. 308), as amended by Act March 4, 1917, 39 Stat. at Large, 1165, c. 179, Comp. Stat. § 8752 et seq. [7 USCA § 151 et seq.], and 1919 Supp. Comp. Stat. § 8760 [7 USCA § 161], providing for the quarantine of nursery stock.

There is no such essential difference, between the laws construed in that case and those now being considered, as will warrant this court in reaching a different conclusion. The plant quarantine laws are not of a wider scope than the poultry quarantine and inspection acts. In the former, Congress has gone into greater detail in the matter of procedure than in the acts now in question. In the latter, procedural matters are left to departmental regulation, but this fact does not manifest an intent to effect less; it only shows a purpose to effect it in a different way.

It was suggested to the court in that case (page 102 [46 S. Ct. 284]) that the states may act, in the absence of any action by the Secretary of Agriculture; that it is left to him to allow the states to quarantine; and that, if he does not act, there is no invalidity in the state action. But the court said: Such construction as that cannot be given to the federal statute. "The obligation to act without respect to the states is put directly upon the Secretary of Agriculture whenever quarantine, in his judgment, is necessary. When he does not act, it must be presumed that it is not necessary." Oregon-Washington Ry. & Nav. Co. v. Washington, supra. See, also, Napier v. Atl. Coast Line, 272 U. S. 605, 47 S. Ct. 207, 71 L. Ed. 432; Mo. Pac. R. Co. v. Porter, 273 U. S. 341, 47 S. Ct. 383, 71 L. Ed. 672.

It is to be assumed that Congress had this rule in mind when it passed the amendment of February 7, 1928, and, if it had intended to authorize or recognize state authority, pending action by the Secretary, it would have made provision, as it did in 'the joint resolution relating to quarantine against plant disease, passed (April 13, 1926, 44 Stat. at Large, 250, c. 135, Comp. Stat. Supp. 1926, § 8760 [7 USCA § 161]), after the decision in Oregon-Washington Ry. & Nav. Co. v. Washington, supra.

27 F.(2d)—29

The claim is made that the law of Washington involved in that case was strictly a quarantine law, while the regulations of Oregon and Washington now attacked are in the nature of inspection laws, and therefore the Act of March 3, 1905, has no application, but the case is ruled by that of February 2, 1903.

Conceding the distinction, the result claimed does not follow; the object sought to be accomplished in each is the same; it is to prevent the introduction into the state of live poultry affected with dangerous, contagious, infectious, or communicable disease. It is immaterial, as far as authority, national or state, to act is concerned, whether it is sought to accomplish this in the one way or the other.

The defendants rely principally upon the decision of the Supreme Court in Asbell v. Kansas, 209 U. S. 251, 28 S. Ct. 485, 52 L. Ed. 778, 14 Ann. Cas. 1101. In view of the unqualified nature of the rulings in Oregon-Washington Ry. & Nav. Co. v. Washington, Napier v. Atl. Coast Line, and Missouri Pacific R. Co. v. Porter, supra, it is not necessary to determine whether all parts of the opinion in Asbell v. Kansas can be reconciled with these cases or not. It will be noted, however, that in Asbell v. Kansas the review was of a conviction for transporting cattle into the state without causing them to be inspected and passed as healthy, by the proper state officials or by the Bureau of Animal Industry of the United States. The following language used in that opinion will also be noted:

" * * * Rule 13, issued by the Secretary of Agriculture under the authority of the statute, is brought to our attention by the plaintiff in error. It is enough to say now that the rule is directed to transportation of cattle from quarantined states, which is not this case, *and that in terms it recognizes restrictions imposed by the state of destination. * * * *"* (Italics those of this and not of the Supreme Court.)

In the case now being considered it clearly appears, from the affidavits on the application for interlocutory injunction, that the Bureau of Animal Industry has not recognized the restrictions embodied in the regulations now under attack. In fact, it would appear that the Bureau is opposed to them.

Motions to dismiss will be denied. Interlocutory injunction will be granted.