STATE, Respondent, vs. WHITFIELD, Appellant.

*November 10—December 4, 1934.*

The cause was submitted for the appellant on the brief of *Edmund B. Shea* of Milwaukee, and for the respondent on that of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Fred Risser,* district attorney of Dane county.

WICKHEM, J.   This appeal involves no determination of fact or procedural error.   The goods possessed and sold by defendant were manufactured by convict labor in Alabama. When the alleged offense was committed, the goods were still in the original package in which they were contained at the time of shipment into Wisconsin.   The goods were identical in quality with others of the same grade in the open market.   None of them were labeled in accordance with the requirements of sec. 132.13, which requires that "all goods, wares and merchandise made by convict labor in any penitentiary, prison, reformatory or other establishment in which convict labor is employed in any state, except this state, and imported, brought or introduced into this state shall, before being exposed for sale, be branded, labeled or marked . . . 'Convict-made,' " together with the name of the prison or other penal establishment in which it was made.   The statute describes in some detail the character of the tag or label to

be used, and the manner in which it shall be affixed to the goods.

The section was passed subsequently to the enactment by congress of the Hawes-Cooper Act (45 Stat. at L. 1084). This act provided, with respect to convict labor, that the products of such labor "transported into any state or territory of the United States and remaining therein for use, consummation, sale, or storage, shall upon arrival and delivery in such state or territory be subject to the operation and effect of the laws of such state or territory to the same extent and in the same manner as though such goods, wares, and merchandise had been manufactured, produced, or mined in such state or territory, and shall not be exempt therefrom by reason of being introduced in the original package or otherwise."

The first contention of the defendant is that both sec. 132.13 and the Hawes-Cooper Act are repugnant to the interstate commerce clause of the federal constitution. The case principally relied upon by the defendant is that of *Hammer v. Dagenhart*, 247 U. S. 251, 38 Sup. Ct. 529, in which the constitutionality of the Child Labor Act (39 Stat. at L. 675) was involved. This act forbade the shipment in interstate commerce of the product of any mill in which children under the age of fourteen had been employed or permitted to work. This act was held to be unconstitutional and void. In that case the court held that congress could forbid the use of interstate commerce as an agency to promote immorality, dishonesty, or the spread of any other evil or harm to the people of other states from the state of origin, but could not forbid the transportation in interstate commerce of entirely harmless articles for the purpose of performing some social policy having to do with the manner or condition of production. It was pointed out in the *Hammer Case* that the goods shipped were harmless and ordinary articles of commerce. The court repudiated the suggestion that the authority of congress may

be exerted to control interstate commerce in the shipment of child-made goods because of evils created in other states where this class of labor has been forbidden. The court thus phrased and answered the contention:

"In other words, that the unfair competition, thus engendered, may be controlled by closing the channels of interstate commerce to manufacturers in those states where the local laws do not meet what congress deems to be the more just standard of other states.

"There is no power vested in congress to require the states to exercise their police power so as to prevent possible unfair competition. . . . The commerce clause was not intended to give to congress a general authority to equalize such conditions."

This case was followed by *Bailey v. Drexel Furniture Co.* 259 U. S. 20, 42 Sup. Ct. 449, which dealt with an act (40 Stat. at L. 1057) which sought to reach the child labor problem through a revenue measure. The court held that the law imposed a penalty of such character as to make it substantially prohibitory in effect and purpose, and the law was held to be unconstitutional. In numerous cases, such as *Champion v. Ames (Lottery Case)*, 188 U. S. 321, 23 Sup. Ct. 321; *Hipolite Egg Co. v. United States*, 220 U. S. 45, 31 Sup. Ct. 364; *Hoke v. United States*, 227 U. S. 308, 33 Sup. Ct. 281; *Caminetti v. United States*, 242 U. S. 470, 37 Sup. Ct. 192; *Clark Distilling Co. v. Western Maryland R. Co.* 242 U. S. 311, 37 Sup. Ct. 180; and *Brooks v. United States*, 267 U. S. 432, 45 Sup. Ct. 345, the court held in substance that congress could regulate to the extent of prohibiting the use of interstate commerce for the promotion of immorality, or the shipment of goods of inherently harmful nature. Hence, we take it to be settled that congress is without power to prohibit the transportation in interstate commerce of articles that are entirely harmless, for the purpose of dealing with a social problem involved in the manner of their production. The Hawes-Cooper Act, however, does

not prohibit the transportation in interstate commerce of prison-made goods. It merely provides that shipments of such goods shall lose their interstate character upon arrival at their destination, and that they are thereafter subject to the regulation of the state into which they were shipped as though they had originated there. In this respect the Hawes-Cooper Act is substantially like the Wilson Act (26 Stat. at L. 313). The Wilson Act provided that certain specific legitimate subjects of commerce, namely, intoxicating liquors, would lose their interstate character as soon as they crossed the line of the state of their destination, and could thereafter be regulated and controlled under the police power of that state, without interference with the powers of congress over interstate commerce. The Wilson Act was held to be constitutional in *In re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865, 869. The court there said:

"No reason is perceived why, if congress chooses to provide that certain designated subjects of interstate commerce shall be governed by a rule which divests them of that character at an earlier period of time than would otherwise be the case, it is not within its competency to do so."

It is our conclusion that this case governs and establishes the validity of the Hawes-Cooper Act, and that the cases heretofore discussed and dealing with prohibitory acts are not in point. It follows that defendant's first contention is without merit.

The next contention offers much greater difficulties. It is contended that the classification established by sec. 132.13 is arbitrary and discriminatory in that the act requires the labeling of convict-made goods when these goods are manufactured without the state, but imposes no such requirement as to prison-made goods manufactured in the state of Wisconsin. It is contended that there is no reason whatever having to do with the life, health, safety, welfare, or morals of Wisconsin citizens, which would justify this state in imposing

regulations upon prison-made goods originating without the state, and to omit these regulations with respect to Wisconsin-made goods of the same character. We are unable to escape the conclusion that defendant's contention in this respect is sound. In *People v. Hawkins*, 85 Hun, 43, 32 N. Y. Supp. 524, 526, a statute nearly identical with sec. 132.13 was declared to be unconstitutional because it discriminated between convict-made goods of other states, and those made in the state of New York. The court said:

"Commerce among the states cannot be said to be free when a commodity is, by reason of its foreign manufacture, subjected by a state legislature to discriminating regulations or burdens."

In *Plumley v. Massachusetts*, 155 U. S. 461, 15 Sup. Ct. 154, the plaintiff in error was convicted in the municipal court of Boston upon the charge of having sold oleomargarine in violation of a statute enacted in Massachusetts. The act in question prohibited the possession with intent to sell, or the sale of, any article made wholly or partly out of any fat, oil, or oleaginous substance not produced from unadulterated milk or cream, which shall be in imitation of yellow butter produced from pure unadulterated milk or cream. The act did not prohibit the sale of oleomargarine in a "separate and distinct form, and in such manner as will advise the consumer of its real character, free from coloration or ingredient that causes it to look like butter." This act applied to all oleomargarine whether produced in Massachusetts or imported from other states. The constitutionality of the act was sustained. The opinion contains an analysis of several cases in which the issue of discrimination was present, and it will be useful to review these cases. *Hannibal & St. J. R. Co. v. Husen*, 95 U. S. 465, 24 L. Ed. 527, involved the validity of a statute of Missouri which was so framed as to prevent bringing into that state of any Texan, Mexican, or Indian cattle, between March 1st and December 1st in any

year, whether free from disease or not, or whether their coming into the state would be injurious to its inhabitants or not. This statute was held to be unconstitutional, being designed to obstruct interstate commerce and discriminate between the property of citizens of one state as against that of citizens of other states. *Minnesota v. Barber,* 136 U. S. 313, 10 Sup. Ct. 862, involved the validity of a statute of Minnesota which excluded from the markets of that state all fresh beef, veal, etc., of certain description, although entirely sound, healthy, and fit for human food, taken from animals slaughtered in other states. The court held that this act constituted a discrimination against the products and business of other states, in favor of the products and business of Minnesota. *Brimmer v. Rebman,* 138 U. S. 78, 11 Sup. Ct. 213, involved the validity of a statute of Virginia relating to the sale, in that commonwealth, of unwholesome meat. The court held this to be discriminatory in that it prohibited by its necessary operation the sale of entirely wholesome meat if the origin of the meat was without the state. In *Walling v. Michigan,* 116 U. S. 446, 6 Sup. Ct. 454, there was involved the validity of a statute of Michigan imposing a tax on persons not residing or having their principal place of business within the state, but engaged in Michigan in the sale or soliciting the sale of intoxicating liquors to be shipped into the state from places without it. The law was held to be in restraint of interstate commerce and void. It was suggested that the tax imposed was an exercise of the police power of the state for the discouragement of the use of intoxicating liquors, and the preservation of the health and morals of the people. The court said that this would have been a perfect justification of the act had it not discriminated against the citizens and products of other states. After thus reviewing the foregoing cases, the court, in the *Plumley Case,* said:

"It is obvious that none of the above cases presented the question now before us. Each of them involved the question

whether one state could burden interstate commerce by means of discriminations enforced for the benefit of its own products and industries at the expense of the products and industries of other states."

The court held that if the statute of Massachusetts had been so framed as to be applicable only to oleomargarine manufactured in other states, the case would have been entirely different, but that since the statute applied to all oleomargarine, wherever produced, and was not discriminatory, it was sustainable under the police power.

In order that this law be condemned as discriminatory, this court must be able to say that there exists no fair reason for the application of such a law to goods made outside of the state that does not exist for goods made within the state. If, for example, this state were committed by definite legislative declaration either to the policy of not producing convict-made goods for the market, or not selling them without labeling, there might exist some reason for the apparent discrimination. It is alleged by plaintiff that it has been the practice and policy of this state properly to mark and label products produced by convict labor and sold on the open market. We discover no legislative declaration of this policy, and this court cannot take judicial notice of the administrative policy of those engaged in supervising the prisons and prison labor. The statutes (secs. 56.02 to 56.06) contain no prohibition against the sale of unlabeled prison-made goods. This being true, it must be said that there exists no fair reason for discriminating in favor of goods produced in Wisconsin by convict labor, and that the law must fail because of the arbitrary character of this classification.

It follows that the law is unconstitutional and void, and that the judgment of conviction must be reversed.

*By the Court.*—Judgment reversed, and cause remanded with directions to discharge the defendant.